ELIZABETH KOEHLER, as Administratrix of the Estate of JOHN KOEHLER, Deceased, Appellant, *v.* THE NEW YORK STEAM COMPANY, Respondent.

MASTER AND SERVANT — MASTER'S DUTY OF INSPECTION — ERRONEOUS DIRECTION OF VERDICT. The duty of inspection is the master's duty and one that cannot be delegated so as to relieve him from responsibility; if a servant performs this duty he is the *alter ego* of the master and for any negligence in its discharge the latter is liable; it is error, therefore, upon the trial of an action to recover damages for the death of plaintiff's intestate resulting from the bursting of an elbow in a steam pipe alleged to have been caused by a spongy condition of the metal at the point of fracture, to direct a verdict for the defendant, where the evidence, although conflicting upon all the material facts involved, would have warranted the jury in finding that there was a defect in the elbow which a careful inspection would have disclosed.

*Koehler* v. *New York Steam Co.*, 93 App. Div. 612, reversed.

(Argued October 5, 1905; decided October 24, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 3, 1904, affirming a judgment in favor of defendant entered upon a verdict directed by the court and an order denying a motion for a new trial.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The accident which caused the

1

death occurred on the afternoon of Sunday, September 23rd,
1900.   At that time the intestate was a laborer in the employ
of the defendant, a corporation engaged in the business of
supplying steam for motive and heating purposes by means of
pipes laid under the streets of the city of New York.

The accident occurred at the corner of Cedar and William
streets.   The intestate, with other laborers, was at work in a
trench engaged in repairing a pipe under the direction of the
defendant's foreman.   While thus engaged an elbow upon
another pipe owned and controlled by the defendant and which
was then charged with steam split open, allowing the steam to
escape and scalding the deceased so badly that he died in con-
sequence thereof a few days later.

The elbow that burst was a new one, and shortly prior to
the accident had been taken from the defendant's storeroom
where large numbers of similar castings were kept.   Upon the
trial the evidence was conflicting as to whether there was a
defect in the elbow or whether a careful inspection would
have disclosed such defect.

The action has been tried three times.   Upon the first trial
the jury rendered a verdict in favor of the plaintiff.   The
judgment entered upon this verdict was reversed by the
Appellate Division for an error in a ruling upon the evidence.
(71 App. Div. 222.)   Upon the second trial the jury again
rendered a verdict in favor of the plaintiff and again the judg-
ment was reversed by the Appellate Division.   (84 App. Div.
221.)   Upon the third trial a verdict was directed by the court
in favor of the defendant.   The judgment entered thereon
was affirmed by the Appellate Division by a divided court,
and this appeal is from that affirmance.

*Edward A. Alexander, Jerome H. Buck* and *Ignatius
Weltner* for appellant.   This being a directed verdict, upon
this review the appellant is entitled to the most favorable
inferences deducible from the evidence, and all disputed facts
are to be treated as established in her favor.   (*McDonald
v. Met. St. Ry. Co.,* 167 N. Y. 66; *Higgins* v. *Eagleton,*

155 N. Y. 466; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 345, 347; *Waldron* v. *Fargo*, 170 N. Y. 130; *Sundheimer* v. *City of New York*, 176 N. Y. 495.) The question whether the defendant had provided a reasonably careful inspection should have been submitted to the jury. (*McGuire* v. *Bell Tel. Co.*, 167 N. Y. 208; *Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302; *Simone* v. *Kirk*, 173 N. Y. 7; *Byrne* v. *Eastman Co.*, 163 N. Y. 461; *Franck* v. *Am. Tartar Co.*, 91 App. Div. 571; *Durken* v. *Sharp*, 88 N. Y. 225; *Fuller* v. *Jewett*, 80 N. Y. 46; *Egan* v. *D. D., E. B. & B. R. R. Co.*, 12 App. Div. 556; *Hoes* v. *O. S. S. Co.*, 56 App. Div. 259; *Kain* v. *Smith*, 89 N. Y. 375.) Whether the breaking of the elbow was due to blows struck while it was under steam pressure was at most a question for the jury. (*Durkin* v. *Sharp*, 88 N. Y. 225.) Plaintiff's intestate did not assume the risk. (*Dowd* v. *N. Y., O. & W. R. R. Co.*, 170 N. Y. 459.)

*Frank Verner Johnson* for respondent. There is no evidence in the case to warrant a finding that the accident was due to the negligence of the defendant. (*Carlson* v. *P. B. Co.*, 132 N. Y. 273; *Burke* v. *Witherbee*, 98 N. Y. 562; *Probst* v. *Delamater*, 100 N. Y. 266; *Harley* v. *B. C. Mfg. Co.*, 142 N. Y. 31; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 164 N. Y. 491; *Bucher* v. *Pryibil*, 19 App. Div. 126; *Powers* v. *N. Y. C. & H. R. R. R. Co.*, 60 Hun, 19; 128 N. Y. 659; *Biddiscomb* v. *Cameron*, 35 App. Div. 561; 161 N. Y. 637; *Byrnes* v. *N. Y., L. E. & W. R. R. Co.*, 113 N. Y. 256.)

WERNER, J. The learned Appellate Division in its opinion delivered upon the second appeal in this action (84 App. Div. 221), held that the evidence would have warranted a jury in finding that the elbow in question was defective and that a careful inspection would have disclosed the defect. But that learned court also held that the uncontradicted evidence of the defendant's employees proved that a proper inspection had been made. Upon that view of the evidence the court

seems to have decided as matter of law that the defendant had fully performed its duty when it had provided the means and men for a proper inspection. To state it in a different form, the court held that although the evidence warranted the jury in finding that a defective condition existed which could have been discovered by a careful inspection, yet the defendant was not liable since it had provided for an inspection by competent employees. In this conclusion we think the learned court below clearly erred. It has become one of the axioms of negligence law that the duty of inspection is the master's duty, and one that cannot be delegated so as to relieve the master from responsibility. If a servant performs this duty he is the *alter ego* of the master and for any negligence in its discharge the latter is liable. This rule is well stated by Chief Judge CULLEN in *McGuire* v. *Bell Telephone Co.* (167 N. Y. 208, 211) as follows : " The master personally owes to his servants the duty of using ordinary care and diligence to provide for them a reasonably safe place to work, and sound and suitable appliances and materials with which to work, and is bound to inspect and examine these things from time to time and use ordinary care to discover and repair defects in them. Reasonable care involves proper inspection, and negligence in respect to it, in such cases as this, is the negligence of the master, and none the less so when the inspection is committed to a servant." The rule thus set forth is established by a long line of cases in this court, of which we cite only a few. (*Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302; *Durkin* v. *Sharp*, 88 id. 225 ; *Simone* v. *Kirk*, 173 id. 7, 13 ; *Byrne* v. *Eastmans Co.*, 163 id. 461, 465 ; *Eastland* v. *Clarke*, 165 id. 420, 429.)

The evidence before the Appellate Division upon the former appeal was exactly the same as that in the record now before us, and we think it was properly held that the evidence would have warranted the jury in finding that there was a defect in the elbow which a careful inspection would have disclosed. In its opinion (84 App. Div. 224) the court below said : " While the defendant's witnesses in point of numbers

and weight preponderate over those brought by the plaintiff, we should hesitate to disturb this verdict if it rested entirely upon this disputed question of fact as to whether the bursting was or was not due to the original defect in the elbow or casting."

An examination of the record convinces us that the Appellate Division correctly decided that the evidence was conflicting on all the material facts involved. At the time of the accident the pipe of which the elbow was a part was subject to a pressure of 80 to 85 pounds of steam to the square inch. It is not disputed that the metal on the inside of the neck of the elbow at the point of fracture was spongy, although the claim is made that there was enough solid metal outside of this spongy portion to make the casting safe.

Viola, an expert called as a witness on behalf of plaintiff, was shown the broken elbow upon the trial, and was asked to state whether he observed any defects in it. He answered: "Yes, the lower part of this elbow is defective. Some part of this casting is spongy. * * * The outer side is a sound casting, perfectly sound, and the only defect is in the lower middle piece, the lower joint of the casting. That I say is spongy." He then testified that the defect that "I have observed * * * in the broken part of this elbow could have been discovered by the use of the hammer test." The hammer test consists of tapping the outside of the casting with a hammer, and the sound indicates the condition of the metal. This was assumed by both parties to be a proper method of testing the casting. In answer to a hypothetical question put to Viola in which the facts surrounding the bursting of the elbow were set forth, he stated his opinion as to the cause of the bursting as follows: "It could only be a defect of the elbow." In answer to a question by the court as to what defect he meant, he stated: "The spongy part, which cannot stand the same pressure as the sound part." Upon cross-examination by the defendant's counsel he testified: "In all castings sponginess on the interior can happen, but not always. I know that this metal is cast in a mold with sand,

and that the part around the sand cools first and forms a shell there, and the inside cools later. When the inside of the iron cools it contracts somewhat, and the inside contracting is likely to draw away a little from the outside shell at times."

Moldenke, another expert called on behalf of plaintiff, also pointed out this spongy condition as a defect, and stated that in his opinion this defect was the cause of the bursting. He further stated that "under the circumstances a ten-pound pressure was sufficient to break this elbow in the condition that I find it here." Upon cross-examination he testified: "In casting iron in any form whatsoever there are always chances that there will be some blow holes or sand holes, or something of that kind, in the castings, and that happens, to some extent, in all castings, and it should be carefully watched so that it should not happen. It has to be watched to some extent, not in almost all castings. It only happens when the iron is not of the right quality or the mold is not right, or some cause that can be avoided with proper management. In casting a solid piece of metal the outside of that metal cools first, and that forms a hard shell, and the inside cools a little later usually, and that contracts somewhat, and that would have the effect of making a slight spongy appearance upon the inside at times if it were left to do so. That is not the practical result which we find very frequently in casting if it is handled right. If the casting is fed properly the liquid interior is re-fed or replenished, so that it sets just as sound as the outside. That is one of the causes of the spongy appearance. I have had occasion to break open any number of castings of this particular form and shape, and I know, as matter of fact, that where a casting is made in the form of an elbow like this, and the iron is molded into this particular shape, that a slight sponginess frequently appears in this particular portion of the casting." Upon redirect examination he was asked how he arrived at the conclusion as to what pressure would break open a spongy elbow, and he replied: "The reason goes into the constitution of the iron. We have here a spongy portion of the iron. We know that when

pressure is applied to a piece of cast iron of this nature, that the pressure will get between the crystals and separate them one by one quietly; then we have a weak spot here and perhaps a pressure of ten pounds to the square inch may be sufficient to separate the crystals. Naturally, cracks form, and then steam escapes, and it breaks a hundred times easier than a sound one would. * * * In other words, there may be something acting — my experience shows that there is something acting on the spongy part, which makes it absolutely weak in that spot. It may take years to show it, or it may take half an hour. But when it is finally through the steam escapes, then you have an opening and it is only a matter of time when it bursts. That is my opinion, as far as I know. So the question of pounds to the square inch does not cut a figure in this thing at all."

This evidence on the part of the plaintiff is supplemented by the testimony of the defendant's witness Johnson, who was a machinist in the employ of the defendant, and was called by it as a witness. He testified that it was part of his duties to test castings with a hammer. Upon cross-examination by plaintiff's counsel, he stated: "The narrow part of plaintiff's Exhibit C (the elbow in question) at one end is spongy. It is a weak spot. I consider that a weak spot."

It is unnecessary to go at length into the testimony adduced on behalf of the defendant, for it is apparent that the evidence on behalf of the plaintiff above referred to was sufficient to create an issue of fact upon the vital question whether there was a defect in the elbow which a reasonably careful inspection would have disclosed. It is sufficient to say that the evidence of the defendant's employees and experts tended to show that the elbow in question had been examined by means of the hammer test; that the defect was not discoverable by means of that test; that the casting was considerably heavier than those which were then ordinarily used for the same purpose; that there was a sufficient thickness of solid iron outside of this spongy portion to make the elbow safe,

and that the iron of which it was made was of sufficient strength to withstand a pressure of at least 1,500 pounds to the square inch. The credibility of these witnesses and the weight of their testimony were, of course, matters for the consideration of the jury in the light of the testimony of plaintiff's experts, Viola and Moldenke, to the effect that the amount of pressure a casting may stand for a given time is not necessarily an indication of its actual condition, since a spongy spot may yield to pressure quite suddenly or disintegrate by degrees.

In disposing of this case it is to be borne in mind that this is a directed verdict, and the appellant is not only entitled to the most favorable inferences deducible from the evidence, but all the disputed facts are to be treated as established in her favor. (*Higgins* v. *Eagleton*, 155 N. Y. 466; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 id. 345, 347; *Waldron* v. *Fargo*, 170 id. 130; *Sundheimer* v. *City of New York*, 176 id. 495.) There was also some slight evidence tending to show that between the time when the elbow was placed in position and the time of the accident, marks or dents were made on the elbow. It was argued that these dents might have been made by the workmen in the process of handing tools to the laborers in the trench, and that the bursting of the elbow might have been caused by a violent blow upon the pipe while under pressure. But these are mere suggestions which seem to have no substantial support in the evidence. All that can be said upon that point, in any event, is that this also may have been a question of fact for the jury. There is no affirmative evidence as to the conduct of plaintiff's intestate, but the circumstances disclosed by the whole case are such as to clearly make the question of his alleged contributory negligence one of fact for the jury.

The judgment of the Appellate Division and that of the trial court should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, BARTLETT, HAIGHT and VANN, JJ., concur; O'BRIEN, J., absent.

Judgment reversed.