REYNOLD MACDONALD, as Receiver of the FREDONIA AND
OLEAN GARAGE COMPANY, Appellant, *v.* HARLOW J.
CRISSEY, Respondent.

Contract — when written instrument may be reformed by
court — when complaint in action to reform written contract
improperly dismissed.

1. Parol evidence is competent to show that a written contract,
not under seal, apparently made between the parties named in it,
was in fact made between one of them and a person not named.
Equally is a party entitled to a reformation of his contract when
he brings a suit in equity and establishes the facts that entitle him
to relief. Where there is no mistake as to the terms of an agree-
ment, but through a mistake of a scrivener, or by any other inad-
vertence in reducing it to writing, the instrument does not express
the agreement actually made, it may be reformed by the court; it
is only where an action is to reform the agreement itself that it is
necessary to allege in the pleadings and prove on the trial that the
mistake was mutual. (*Born* v. *Schrenkeisen*, 110 N. Y. 55, followed.)

2. In an action in equity to procure the reformation of a written
contract and to recover damages for the breach of the contract as
reformed, the complaint alleged that the plaintiff entered into a
contract with the defendant for the sale of an automobile by the
former to the latter; that it was later reduced to writing; that
through the mistake of the scrivener the written instrument pur-
ports to be a contract between the plaintiff and the defendant on
one side and a certain company on the other, by which the plain-
tiff and defendant agreed to purchase from said company an auto-
mobile of a specified model, equipment and price, when in fact it
was the intention of the plaintiff and the defendant to enter into a
contract with each other by which the plaintiff was to be the seller
of the automobile and the defendant was to be the purchaser.
The testimony, so far as it was received, all served to support the
pleading, and proved, in the absence of contradictory evidence, a
convincing array of circumstances, all pointing to the view that the
contract was intended to be one between the plaintiff and the
defendant. *Held*, that a dismissal of the complaint at the close of
the plaintiff's case, on the ground that there was no evidence to
warrant or support a judgment for the reformation of the contract
or for the recovery of damages, was error.

*MacDonald* v. *Crissey*, 155 App. Div. 944, reversed.

(Argued June 16, 1915; decided July 13, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 5, 1913, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herman J. Westwood* and *Louis G. Monroe* for appellant. Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener or of either party, no matter how it occurred, may be corrected. (*Born* v. *Schrenkeisen*, 110 N. Y. 55; *Pitcher* v. *Hennessey*, 48 N. Y. 415; *Maher* v. *Hib. Ins. Co.*, 67 N. Y. 283; *Trenton Pottery Co.* v. *Title G. & T. Co.*, 176 N. Y. 65; *McGuire* v. *Hartford Fire Ins. Co.*, 7 App. Div. 575; 158 N. Y. 680; *Steinbach* v. *Prud. Ins. Co.*, 62 App. Div. 133, 137; 172 N. Y. 471; *Arlt* v. *Whitlock*, 65 App. Div. 246; *Nat. G. & M. Co.* v. *MacCormack*, 124 App. Div. 569; *Le Gendre* v. *Scot. U. & N. I. Co.*, 95 App. Div. 562; *Bacot* v. *Fessenden*, 139 App. Div. 647.)

*William S. Stearns* for respondent. Reformation of a contract will only be decreed upon the clearest, most convincing and substantial proof. The mistake must be mutual, and the paper as finally executed must fail to express the actual intent of each of the parties. It is not sufficient that it does not express the intent of only one of them. (*C. & T. R. R. Co.* v. *Twenty-third St. Ry. Co.*, 149 N. Y. 51; *Raby* v. *Company*, 151 App. Div. 72; *Avery* v. *Association*, 117 N. Y. 451; *Cary Mfg. Co.* v. *Merchants' Ins. Co.*, 42 App. Div. 201; *Mead* v. *Company*, 64 N. Y. 453; *L. V. Br. Co.* v. *Commerce Ins. Co.*, 143 App. Div. 665; *Stolitzky* v. *Lindschied*, 150 App. Div. 253; *Matter of Schott*, 159 App. Div. 824; *Harper* v. *Newburg*, 159 App. Div. 695.) Plaintiff has not brought

himself within the rule. The uncontroverted evidence shows there was no mutual mistake, mistake of scrivener, fraud, or lack of expression of real intent of the parties. In fact, the instrument expresses the desired intent of the parties. (*Matter of Case*, 214 N. Y. 199; *Curtis* v. *Albee*, 167 N. Y. 360; *Story* v. *Conger*, 36 N. Y. 673.)

WERNER, J. This is a suit in equity, brought by the plaintiff as receiver of a firm of which he had been a member, to procure the reformation of a written contract, and to recover damages for the breach of the contract as reformed. It will simplify the discussion to refer to both firm and receiver as the plaintiff. At the close of the plaintiff's case on the trial the complaint was dismissed. From the judgment entered on that decision the plaintiff appealed to the Appellate Division, where there was an affirmance, and the case is now before us on the plaintiff's appeal.

The complaint is framed on the theory that the plaintiff entered into a contract with the defendant for the sale of an automobile by the former to the latter; that it was later reduced to writing; that through the mistake of the scrivener the written instrument purports to be a contract between the plaintiff and the defendant on one side and the E. R. Thomas Motor Company on the other, by which the plaintiff and defendant agreed to purchase from the Thomas Motor Company an automobile of a specified model, equipment and price, when in fact it was the intention of the plaintiff and the defendant to enter into a contract with each other by which the plaintiff was to be the seller of the automobile and the defendant was to be the purchaser. The complaint was dismissed on the ground that there was no evidence to warrant or support a judgment for the reformation of the contract, or for the recovery of damages. For the purpose of determining whether this ruling was proper, we must proceed to a closer view of the transaction, and we shall

first consider the facts and circumstances in the light of which we are to pass upon the character and effect of the written instrument.

On this review we have the right to assume the following facts: The E. R. Thomas Motor Company is engaged in the manufacture of "Thomas" automobiles of various models, and its place of business is in the city of Buffalo. Its selling department is represented by so-called agents, who are in fact not agents, but independent dealers. They buy from the manufacturer in their own names, and they sell in the same way. That was concededly the status of the plaintiff in May, 1910, then transacting business under the firm name of the Fredonia and Olean Garage Company, and having the exclusive right to sell "Thomas" automobiles in the county of Chautauqua, of which the village of Fredonia is a part. The plaintiff and defendant were both residents of Fredonia. The defendant was the owner of a Thomas car which he had purchased in 1907. On several occasions before 1910 the plaintiff and defendant had talked about a trade of the defendant's old car for a new one. This was the situation when they met at the Thomas factory in Buffalo on the 18th day of May, 1910. Their meeting was not by appointment. The plaintiff happened to be there with other prospective buyers of cars, and the defendant was there ostensibly to ascertain what he could do in the way of making a bargain directly with the Thomas Company. In these circumstances the plaintiff and the defendant went to the room of Van Deusen, the sales-manager of the Thomas Company, where they discussed the defendant's prospective purchase of a new automobile. According to the plaintiff's testimony there was not much talk in the presence of Van Deusen, apparently for the reason that the plaintiff and the defendant had agreed on the terms of the trade before they went into Van Deusen's office. The plaintiff testified that during the conversation in Van Deusen's room nothing was said about a contract directly

between the defendant and the Thomas Company. This was contradicted by Van Deusen, who was called as a witness for the plaintiff. He testified that the plaintiff and the defendant came into his room; that the plaintiff stated that he and the defendant had about come to an arrangement whereby the defendant was to purchase a " 1910 Model M " Thomas car; that the defendant was in some doubt because he wanted a seven-passenger body of a style not then being made by the Thomas Company; that he, Van Deusen, told the defendant that the company would make for him a seven-passenger body if he would wait until it could be turned out, and meanwhile the company would loan him a five-passenger body, for the use of which he was to pay seventy-five dollars; that the defendant said that this was satisfactory, but he wanted to deal directly with the Thomas Company; that he, Van Deusen, replied that it would be impossible for the defendant to deal directly with the Thomas Company; that the company did no " trading " in second-hand cars; that Fredonia was in the territory covered by the plaintiff; and that under the plaintiff's contract with the company he had exclusive right to sell new Thomas cars in that territory; that the defendant then replied, " That is all right; what I want to get is the date of delivery; and I would sooner take the date of delivery promised by the E. R. Thomas Motor Company than the dealer." Van Deusen thereupon took from a drawer of his desk an " order " form which he filled out in his own handwriting. This was signed by the plaintiff and by the defendant, and delivered to Van Deusen as the representative of the Thomas Company.

On the following day, the plaintiff sent a man to get the defendant's old car and bring it to the plaintiff's garage. This was done. At the request of the defendant the plaintiff removed from the old car various parts that were to be transferred to the new car. Then the old car was " overhauled " by the plaintiff and he at once

began to make efforts to sell it. He took it to James-town for that purpose and being unsuccessful he brought it back to the plaintiff's garage, from which place it was afterward taken by the defendant, in the plaintiff's absence and without his consent.

In the light of these facts it is now in order to ascer-tain the contents and character of the paper which was signed by the plaintiff for the Fredonia and Olean Garage Company, and by the defendant.

"Order No..........

"Sales Agency Order Form.

" *May* 18*th*, 1910.

"To E. R. Thomas Motor Company,
"Buffalo, N. Y.:

" Please enter our order for one Thomas Motor Car as prescribed below: Model M. Style body 7 Pass. touring. Color Body Russian Green; Color Gear Russian Green; color, Upholstering Standard Dull Black. Tires, Diamond Q. D. Remarks: Stripe body and gear with hair line cream stripe.

" Accessories (Extra).

" Monogram H. J. C. on doors — Plain black letters; slip covers; trunk rack.

" Shipment.

" Date of shipment desired May 26, '10. Ship via.... del'y. at factory. Remarks: Old body to be used and ret'd. in August. Charg. for use old body & for painting car $75.00 net.

" Terms: Sec'd. Hd. Car................. $2,250.00
" Cash............ ......    1,635.00

$3,885.00

" Signed FREDONIA & OLEAN GARAGE COMPANY,
" Signed R. MacDONALD,
"H. J. CRISSEY."

This paper is addressed to the E. R. Thomas Motor Company. If the instrument is to be regarded as a contract between that company on the one side, and the plaintiff and the defendant on the other side, we have a consummation not intended by any of the parties to the transaction. The Thomas Company surely did not intend to deal directly with the defendant, for Van Deusen, the agent of the Thomas Company, had told him that there was no possibility of such an arrangement. It is equally clear that the plaintiff and the defendant were not joint purchasers of an automobile, and yet that is what the writing imports if it is to be regarded as a contract between them and the Thomas Company. The instrument also fails as a contract between these parties because the Thomas Company did not sign it. These considerations are illuminated by the significant circumstance that at the very time and place the plaintiff signed another contract for the same car. This second paper was identical with the first in every particular except one, and that was the absence in the second of any reference to the defendant as a contracting party. Its obvious purpose was to transfer to the plaintiff the title to a car which he was selling to the defendant. This conduct was wholly incompatible with the idea of a contract between the plaintiff and the defendant on the one hand and the Thomas Company on the other, but quite consistent with the theory of a contract between the plaintiff and the defendant. Van Deusen did not retract or modify his positive statement to the defendant to the effect that it would be impossible for the latter to deal directly with the Thomas Company, and it is plain that his testimony as to the defendant's expression of satisfaction with the arrangement may fairly be considered as relating to the time of delivery of the car and not to the form of the contract or the personnel of the contracting parties. Thus, in the absence of contradictory evidence, we have a convincing array of circumstances, all pointing to the

view that this was intended to be a contract between the plaintiff and the defendant. The writing itself also con-. tains intrinsic corroboration of these circumtances in the allowance of $2,250 for the defendant's old car, and in the item of $75 for the temporary use of a " body " until the Thomas Company could make for the defendant such an one as he wanted. The allowance of $2,250, for the defendant's old machine was to be made by the plaintiff, and the charge by the Thomas Company for the temporary use of a " body " was made to the plaintiff and not to the defendant. As against all these things there is the single fact that the contract is addressed to the Thomas Company. That is a circumstance which, under well-established rules, would have entitled the plaintiff to make his oral explanation if he had brought his action at law. Parol evidence is competent to show that a written contract, not under seal, apparently made between the parties named in it, was in fact made between one of them and a person not named. (*Gordon Malting Co.* v. *Bartels Brewing Co.*, 206 N. Y. 528, 537, and cases there cited.) Equally is he entitled to a reformation of his contract when he brings a suit in equity and establishes the facts that entitle him to relief. " Where there is no mistake as to the terms of an agreement, but through a mistake of a scrivener, or by any other inadvertence in reducing it to writing, the instrument does not express the agreement actually made, it may be reformed by the court; it is only where an action is to reform the agreement itself that it is necessary to allege in the pleadings and prove on the trial that the mistake was mutual." (*Born* v. *Schrenkeisen*, 110 N. Y. 55.) The complaint in the case at bar is in precise conformity with the rule thus enunciated, and the testimony, so far as it was received, all serves to support the pleading. Some of the questions of plaintiff's counsel, addressed to this subject, were inartificial in form, but that does not affect the admissibility of proper oral tes-

timony to show that the failure to erase from the printed form the name of the Thomas Company, and to write in the name of the Fredonia and Olean Garage Company, was a simple inadvertence, and that the agreement was in fact one between the plaintiff and the defendant.

In disposing of this case it is to be remembered that the trial court directed a nonsuit. The appellant is, therefore, entitled to the most favorable inferences deducible from the evidence, and all the disputed facts must be regarded as established in his favor. (*Koehler* v. *New York Steam Co.*, 183 N. Y. 1, 8.)

The judgment must be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, MILLER, CARDOZO and SEABURY, JJ., concur.

Judgment reversed, etc.