(173 App. Div. 365)
### TOBIN v. YONKERS ELECTRIC LIGHT & POWER CO.

(Supreme Court, Appellate Division, Second Department.   June 9, 1916.)

1. MASTER AND SERVANT &#8258;220(7)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Where the servant knew that a bar used to loosen rock, which was struck by one servant while another held it, had mushroomed at the top and was a dangerous tool, and had so informed the foreman, who told him to do the best he could with it, he could not recover for injuries due to such defect, since he must have appreciated and assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 641, 644, 645; Dec. Dig. &#8258;220(7).]

2. MASTER AND SERVANT &#8258;288(15)—INJURIES TO SERVANT—ACTIONS—TRIAL.

Such facts appearing from plaintiff's evidence, and defendant having pleaded assumption of risk, the court should have disposed of that question as a matter of law, and dismissed the complaint.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1085; Dec. Dig. &#8258;288(15).]

Appeal from Trial Term, Westchester County.

Action by Thomas Tobin against the Yonkers Electric Light & Power Company. From a judgment for plaintiff, and order denying motion for new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and PUTNAM, JJ.

Thomas H. Beardsley, of New York City, for appellant.

Thomas J. O'Neill, of New York City (Lee Parsons Davis, of White Plains, and Leonard F. Fish, of New York City, on the brief), for respondent.

CARR, J.   The defendant appeals from a judgment against it for personal injuries, and from an order refusing a new trial.  The verdict was for $5,000 damages.  The parties were master and servant. The claim of the plaintiff was that the master had furnished him with a defective and dangerous tool, and that, in the prosecution of the work, the plaintiff was seriously injured, without any negligence on his part, by an accident arising from the use of the defective tool.

The defendant was engaged in the erection of poles, along a public highway, which were to be used to carry its wires.  The plaintiff was one of a small gang of laborers, who were engaged in digging the holes.  These holes were dug to a depth of about six feet.  Shovels were used to dig out the soil.  If rock was met, then a driving bar was used to split the rock.  One man went into the hole and held the bar upright.  Another man struck the bar on its head with a 12-pound sledge hammer.  The men took turns in the use of the implements, and when this accident happened the plaintiff was in the hole, holding the bar, and a fellow servant, Carrol, was using the sledge hammer.  As Carrol struck the head of the bar, the hammer glanced off the head and came in contact with one side of the plaintiff's skull.  The point of the bar was hard steel, and its head un-

tempered steel. The purpose of using a softer substance for the head of the bar is obvious. It was in part to avoid a slipping of the hammer from the head of the bar at the time of the contact with the sledge hammer. This bar had been in use for some time. According to plaintiff's testimony, it was "all bulged out on the top." He testified that he had frequently notified the foreman, Hohe, that the bar was "not fit to work with," and that Hohe said to him, "Do the best you can with it." There was no blacksmith on the job to repair the bar. One Little was working with the plaintiff at the time. He saw the accident. He testified that, when Carrol struck the head of the bar with the sledge hammer, a piece flew off the head of the bar and struck the plaintiff, and that the sledge hammer itself struck the plaintiff on the left side of his head. He had noticed the head of the bar before. "It was all battered in the head until it flanged." The head was spread out. He himself had told Hohe, the foreman, about the condition of the bar several times before the accident, "but he could not do anything because there was no blacksmith shop there, and he said, 'Go on with the work.'"

Each gang had its own set of tools. The separate gangs were working at distances apart. This witness did not know of any custom by which the men working in the gangs attended themselves to knocking off the flanges on the head of the driving bar as they occurred during the process of the work. Hohe, the foreman, a witness for the defendant, said that the plaintiff and Little had not spoken to him about the bar—"not that I remember." As the man used the bar, its head flattened down and "hangs over a little bit." He said, "I generally examine them" (the bars), "and if I find them in that condition I turn them upside down and knock the ends off." He "don't know" whether he examined that bar before or on the day of the accident. He did know that it was not a proper condition for a bar to have its top burred, and that it was dangerous to strike the head of such a bar with a 12-pound sledge hammer. He said on redirect that the men, when working, knocked the burrs off themselves. Carrol, an employé of the defendant, the man who was using the sledge hammer, testified for the defendant. He said that the bar was "only battered," or "slightly mushroomed," and that when the bars got into that condition "you got a hammer and knocked it off," and then "it is as good as new." He described the accident thus:

"Me and Little and Tobin were working at a hole, and we were striking and spelling with a 12-pound hammer. It was my spell on the hammer, and I came down on the drill. I hit the drill all right, but the hammer shied, and, coming off the drill, the hammer touched Tobin on the side of the head."

On cross-examination he amplified this description, but he still said that the hammer shied off the top of the drill.

[1] We have a situation in which the tool was more or less dangerous for use at the time of the accident, and where this dangerous condition caused or contributed to cause the accident. I think this case, so far as the dangerous condition of the drill head is concerned, is distinguishable from that of Kellogg v. New York Edison Co.,

120 App. Div. 410, 105 N. Y. Supp. 398, cited by the appellant. In that case, the accident happened from a "foul blow" with a sledge hammer by a fellow employé, and which blow was held to have been the proximate cause of the accident. There was, however, a ruling by the court in that case which may apply here; i. e., on the question of the assumption of risk by the plaintiff. This action is at common law. The plaintiff knew of the condition of the drill for many weeks, or months, and he complained of its danger, and hence he must have appreciated it. He did not continue at work under a promise from the foreman to remedy the defect. The case at bar is not distinguishable from that of Collelli v. Turner, 154 App. Div. 218, 138 N. Y. Supp. 900, s. c., 215 N. Y. 675, 109 N. E. 83.

[2] The defendant pleaded in its answer an assumption of risks by the plaintiff. The trial court should have disposed of this question, upon the undisputed proofs, as a matter of law. The complaint should have been dismissed.

The judgment and order should be reversed, and the complaint dismissed, with costs. All concur.