**LEONARD v. PRINCE LINE, Limited, et al.**
No. 49, Docket 20308.

Circuit Court of Appeals, Second Circuit.

Nov. 18, 1946.

Kirlin, Campbell, Hickox & Keating, of New York City (Raymond Parmer and Vernon S. Jones, both of New York City, of counsel), for Prince Line, Limited, appellant.

Sylvia Miller, of New York City (Chester A. Hahn, of New York City, of counsel), for John Leonard, plaintiff-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff brought this action against Prince Line, Ltd., for personal injuries suffered by him on September 7, 1943, when employed by Bay Ridge Operating Company as a longshoreman and working on Pier 86, North River, New York City. The pier belonged to the City, which had at one time issued a revocable permit to Bay Ridge Operating Company whereby the latter was granted the use and occupation of the pier and was responsible to the City for its repairs, upkeep and safety. Subsequently, Prince Line, Ltd. was put in possession of the pier under a a similar revocable permit, which was renewed some four months before the accident, by the Municipal Commissioner of Marine and Aviation at an annual rental of $165,000, whereby Prince Line, Ltd., covenanted that: "* * * it will, at its own sole cost and expense, at all times during the continuance of this license or permit, maintain the superstructure of said wharf property and the structures thereon, including decking, sheathing, backing logs, fender system, clusters or other fender piles, vertical sheathing and mooring posts or bitts, in good and sufficient repair and condition and well painted," and also that it "will not assign or sublet, nor in any way charge or encumber the premises hereinbefore described or any part thereof, without the consent in writing of the Commissioner of Marine and Aviation."

It was conceded on behalf of Prince Line, Ltd., at the trial that no consent had ever been obtained to assign or sublet the piers to Bay Ridge Operating Company but the latter, having been the prior permittee and occupant of the premises, was requested by Prince Line, Ltd., to continue to operate the pier in the same way it had been operated when Bay Ridge was itself the

permittee. In accordance with this arrangement Bay Ridge inspected the pier, and made repairs to it and the structures therein, for which it charged Prince Line, Ltd., for labor and materials, plus a small profit. Bay Ridge superintended the pier, collected wharfage for vessels moored there, and paid all charges in connection with repairs and maintenance. It also paid the rental for the pier due from Prince Line, Ltd., and remitted to the latter the wharfage collected after taking credit for the rent it paid to the City, for the cost of the labor and materials it furnished and for the small profit chargeable therefor. Bay Ridge charged all vessels using the pier for wharfage, including those owned by the Prince Line. In making these charges, John Walker, the president of Bay Ridge, testified that he was acting for the Prince Line and that the earnings of Bay Ridge were mainly derived from stevedoring the vessels arriving at the pier. He testified that his company had a carpenter's shop, a machine shop and a gear shop on the pier in which it employed men to make and repair the stevedoring equipment belonging to it. He said that he had sole discretion as to what vessels should come to the berth and even decided when Prince Line's vessels could not come there. This, however, would have been so whether Bay Ridge had control on its own account or solely acted as agent for Prince Line, for it was doing the stevedoring for vessels coming to the pier and, in order to do the business efficiently or practically, had to have freedom in arranging the order in which ships would be loaded or discharged.

At the time the accident occurred the plaintiff and two other employees of Bay Ridge were told to move a chute (weighing about 900 pounds) that was lying on the dock at the end of the pier. To do this they used a block and fall which was attached to a heavy beam that ran between the flanges of two of the I beams in the roof of the pier and rested upon the flanges. When the plaintiff pulled on the line of the gear the beam to which it was attached fell, striking him a glancing blow on the head, and causing the injuries complained of. There was evidence that the block and fall had been attached to the beam for a long time and prior to the issuance of the permit to Prince Line and had been used by the employees whenever they wanted to lift anything heavy (fol. 86).

Upon the foregoing state of facts the defendant moved for the direction of a verdict in its favor. The trial judge denied the motion and instructed the jury that the Prince Line was in occupation and control of the pier through its agent Bay Ridge and was liable for plaintiff's injuries if he was free from contributory negligence and the Prince Line was negligent. The jury rendered a verdict in the plaintiff's favor. The court declined a request by the Prince Line to charge that the latter did not have custody and control of Pier 86 and was not an occupier of it at the time of the accident except that it possessed a legal right of divestiture.

We think that it cannot be said as a matter of law that the Prince Line was not in occupation and control of the pier. There was evidence that Bay Ridge was a mere agent to manage the pier, maintain it in good condition and collect wharfage for account of Prince Line. To be sure it was allowed to have shops there in order to aid in the conduct of its business and there was a statement by Mr. Walker that he could exclude ships of Prince Line from the Pier. But this did not necessarily show dominant control of the premises by Bay Ridge, but only permission to be on the pier so as to conduct its stevedoring business and collect wharfage for Prince Line from vessels of all steamship companies as they came into the slip. These things could hardly be accomplished without allowing the agent to direct the berthing of vessels. It does not follow that Prince Line had no control because it chose not to interfere with its manager. Indeed, in its answer to the complaint, it admitted "that at the times mentioned in the complaint it had the charge, care and management of said pier through contract with Bay Ridge Operating Company, the employer of the plaintiff * * *"

Permission to the Stevedoring Company to have equipment and repair shops on the pier was an incident of its business of loading and unloading the ships from which

Prince Line derived revenue. If that permission gave Bay Ridge rights of an occupant pro tanto it would at best hold such rights and attendant obligations jointly with Prince Line and be liable for negligence as an occupant accordingly.

 We think that there was evidence of occupation and control of the pier by the Prince Line through its agent Bay Ridge. If so, there was a non-delegable duty to maintain it in a safe condition which would have justified the jury in finding the Line guilty of negligence in leaving the beam insecurely resting on flanges which workmen were likely to make use of in moving heavy objects. Moreover, even if there is a question whether Prince Line or Bay Ridge was the one in control, so that the Prince Line could have required the submission of that issue to the jury, it never requested such a submission but only moved for the direction of a general verdict and when that motion was denied requested a charge that Prince Line did not have custody and control of Pier 86 at the time of the accident. Prince Line seems to have relied on an unwarranted theory that there was no evidence of control by it. The question of control was apparently treated by both sides as one for the court and determined by it as such in favor of the plaintiff upon evidence warranting, if not requiring such a determination, as a matter of law. Indeed, defendant's counsel has recognized that the question was one of law for he says in his brief, at page 8:

"* * * The question * * * is entirely one of law, and is with respect to the legal effect of the admitted facts.

"There was no evidence on the trial below that Prince Line was in actual occupation of the pier. * * * It was by means of treating the actual occupation of Bay Ridge * * * as if it were the occupa-

tion of Prince Line that the court rationalized the imposition on Prince Line of a duty to keep the pier in safe condition."

 While it is true that the covenant by Prince Line under the permit to maintain and repair only imposed an obligation upon it in favor of the City and did not create an obligation in favor of the plaintiff, yet there was a common law duty toward invitees like the plaintiff to keep the premises in safe condition for them. Accordingly the Prince Line was under an obligation to inspect the pier and to make the beam secure for workmen who were likely to rely on it as a support for a block and fall. Koehler v. New York Steam Co., 183 N.Y. 1, 75 N.E. 538; Klauder-Weldon Dyeing Mach. Co. v. Gagnon, 2 Cir., 183 F. 962. The only proof offered indicated that the structure was unsafe when Prince Line arranged to have Bay Ridge manage the pier, collect the wharfage and conduct its stevedoring business from the premises. There is no indication that the accident resulted from any defective equipment belonging to Bay Ridge but rather from an insecure part of the superstructure of the pier which the Prince Line was bound to maintain in safe condition.

 The record contains two documents purporting to be judgments for the plaintiff, one prepared by the Clerk in accordance with Rule 58, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the other by the appellee's attorneys, from each of which the appellant has attempted to appeal. We hold that the first is the proper judgment for it conforms to what has been prescribed under Rule 58 in order to expedite and simplify procedure. Costs should have been entered by the Clerk at the foot of the order prepared by him when taxed and we shall treat it as if thus entered.

Judgment affirmed.