MARKERT et al. v. SWIFT & CO., Inc., et al.

No. 149, Docket 21201.

United States Court of Appeals Second Circuit.

March 7, 1949.

518

David Friedman, of New York City (Bernard A. Finkel, of New York City, on the brief), for plaintiffs-appellants.

Thomas Kiernan, of New York City (White & Case and David Hartfield, Jr., all of New York City, on the brief), for defendants-appellees.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The underlying question presented by these appeals is whether or not the plaintiffs' claims for overtime compensation and the other remedies afforded under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., can be rescued through the pleading of additional facts from the bar of the Portal-to-Portal Act of 1947, 29 U.S. C.A. § 252, retroactively applicable to all actions. Battaglia v. General Motors Corp., 2 Cir., 169 F.2d 254, certiorari denied 335 U.S. 887, 69 S.Ct. 236. Though the case has been shunted back and forth between the trial and appellate courts, it has not yet progressed beyond an exercise in pleading niceties. Modern impatience with procedural formalities suggests the probable unproductiveness of such a course, which we must now underscore by our holding that plaintiffs cannot properly be denied opportunity to present the case they believe they have.

Initially we must note defendants' objections to the appeals as not from final judgments. So far as these concern the second appeal, they are a reiteration of grounds taken in motions to dismiss which we have already denied; those directed to the first appeal are newly made. The action was instituted in January, 1947, while the amendatory legislation became effective

May 14, 1947. Thereafter, and before answering, defendants moved for dismissal of the complaint for lack of allegations showing the jurisdiction of the court in accordance with the added requirements of the new legislation.[1] The court made its order of dismissal in November, 1947, and plaintiffs filed notice of appeal. Thereafter they moved in the district court for leave to amend; a district judge requested this court to remand the case to that court for consideration of the motion, and we complied; the district judge then denied the plaintiffs' motion with leave to renew it before the judge hearing the case originally; and when it was so renewed, the original judge denied the leave on the ground that the proffered amended complaint did not fill the omissions found in the original complaint. D.C.S.D.N.Y., 80 F.Supp. 246. The plaintiffs then appealed once more and now attack both the original dismissal of November 21, 1947, and the denial of leave to amend of July 8, 1948.

It is clear that these orders, particularly the later one, both close and seal the door of the federal court to any claim for relief of these plaintiffs under the Fair Labor Standards Act for the grievances asserted. Unless they can now obtain review, they never will have appellate examination of their contention that they are entitled to overtime compensation within the very provisions of the Portal-to-Portal Act itself. Thus it is hard to conceive of a more final (and hence reviewable) judicial action as affecting their asserted rights. This general conclusion is borne out by a detailed examination of the legal situation of the parties. Although defendants' attack upon the first appeal as from an order, not a judgment, of the court, borders on the frivolous under the present rules,[2] we need not linger long on that appeal in view of the clear validity of the second appeal to raise the issues of substance.

In attacking the second order denying leave to amend as not appealable, defendants rely upon Kulesza v. Blair, 7 Cir., 41 F.2d 439, certiorari denied 282 U.S. 883, 51 S.Ct. 86, 75 L.Ed. 779. The implications of that decision, whatever its soundness under former practice, are certainly very limited at best under the specific provisions of the rules, particularly as now amended. Technically the judgment of dismissal should be reopened before an amendment to the complaint is granted. Such relief can be sought within ten days under Federal Rules of Civil Procedure, rule 59, 28 U.S.C.A., and then the running of the appeal time under F.R. 73(a) is automatically suspended. Otherwise the relief must be sought under F.R. 60(b), where the making of the motion does not automatically suspend the operation of a judgment; but there is no doubt that an appeal lies from denial of the relief. See, e. g., Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384; Block v. Thousandfriend, 2 Cir., 170 F.2d 428. Had the steps here been not fully diagrammed, we certainly should not have reversed if ultimately the district court succeeded in reaching the real issue between the parties. De Santa v. Nehi Corp., 2 Cir. 171 F.2d 696. In fact plaintiffs did rely on this rule, somewhat telescoping their prayer, it is true, by asking for an order allowing them "to amend their complaint pursuant to Rule 60, of the

---

[1] 29 U.S.C.A. § 252, subd. (d), denies jurisdiction to any court of any action which accrued prior to May 14, 1947, whether instituted before or on or after that date, to enforce liability for overtime compensation under the Act except for activities compensable under subds. (a) and (b). Subds. (a) and (b) are quoted in substance in note 4 infra.

[2] Under F.R. 54(a), an appealable order is a judgment; had the court clerk here, after entering an order, gone on to enter a judgment, the latter would have been superfluous. F.R. 58; Murphy v. Lehigh Valley R. Co., 2 Cir., 158 F.2d 481, 485; Leonard v. Prince Line, 2 Cir.,

157 F.2d 987, 989. Actually the docket entry here, "Judgment Rendered * * * Nov. 21, 1947," appears to refer only to the actual filing of the order bearing a formal date of the previous day; it is therefore the date of the judgment. F. R. 58, supra; J. E. Haddock, Ltd., v. Pillsbury, 9 Cir., 155 F.2d 820, certiorari denied 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 624. The reference in the notice of appeal to the order dated November 21, 1947, "dismissing the complaint," etc., was thus so explicit that there could be no doubt as to the subject matter of the appeal.

Rules of Civil Procedure"; and the court, only slightly demurring,[3] proceeded to consider the merits. On the whole, however, resort even to Rule 60 seems hardly necessary; our order for remand would seem to supply all that is needed by way of authority below and amount in itself to a vacation of the judgment for further proceedings, including amendments under the usual rule, F.R. 15(a). And while defendants now attempt to support the court's order on the ground of plaintiffs' delay in seeking the relief, the orders in this court and below for consideration of the issue on the merits would seem to have effectually settled any claim of delay. Since the original motion to amend came within three months after the dismissal and shortly after the notice of appeal, and since the proper procedural course under the circumstances appears to have remained in doubt, we must consider the delays of this case moderate as litigation goes. So we regard the second appeal as properly pending before us to raise the issue, to which we now address ourselves, whether the amended complaint states a claim or claims for relief under the new Act.

■ Since this action involves claims accruing before May 14, 1947, it is governed by § 2 of the Act, 29 U.S.C.A. § 252, and by the exceptions therein stated. These require for the recovery of portal-to-portal compensation a showing of either a contract or a custom or practice of the particular business, not inconsistent with the contract, making the work in question compensable.[4] In the proposed amended complaint, as in the original complaint, demand was made for overtime compensation for three distinguishable activities: (a) changing from street clothes into required uniforms and back again, (b) walking to and from the plant entrance and the employee's station, and (c) repairing and preparing tools for use. All these activities may be loosely described as preliminary and postliminary. They are therefore covered by Paragraph X of the proposed amended complaint, which alleges: "That it was the custom and practice in the defendants' plants to pay these employees overtime spent in preliminary and postliminary activities prior to and subsequent to the performance of their duties." It is true that in a later paragraph there is a more limited and insufficient allegation that the activities specified were compensative work, "pursuant to the custom in the trade."[5] No reason appears why this should control the broad terms of the earlier allegation.

Paragraph XI of the proposed complaint states that the plaintiffs were employed for

---

[3] By incorporating by reference, D.C., 80 F.Supp. 246, the objections raised in Bonner v. Elizabeth Arden, Inc., D.C.S.D. N.Y., 80 F.Supp. 243, 245, where the court had found it "difficult to see what possible application Rule 60 has to the motion." But there, too, it disregarded "the irregularities [sic] in the procedure followed by the plaintiffs."

[4] By the terms of § 2(a), 29 U.S.C.A. § 252, subd. (a), an employer is not subject to liability for failure to pay an employee minimum wages or overtime compensation for activities prior to May 14, 1947, "except an activity which was compensable by either—

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee,

his agent, or collective-bargaining representative and his employer."

Subd. (b) then provides: "For the purposes of subsection (a) of this section, an activity shall be considered as compensable under such contract provision or such custom or practice only when it was engaged in during the portion of the day with respect to which it was so made compensable."

Sec. 4(a) of the Act, 29 U.S.C.A. § 254, subd. (a), relieves the employer of certain specified portal-to-portal pay activities, including "activities which are preliminary to or postliminary to said principal activity or activities," engaged in on or after May 14, 1947, while subd. (b) provides that he shall not be thus relieved if the activities are compensable by contract or custom, repeating the language of § 2(a) quoted above and adding the provisions of § 2(d) as subd. (c).

[5] "The compensability of an activity under custom or practice, for purposes of this act, is tested by the custom or the practice at the 'particular place of business,' 'plant,' 'mine,' 'factory,' 'forest,' etc." 29 CFR, 1947 Supp. 790.10(d).

"workweeks longer than the maximum applicable number of hours prevailing under Section 7 of the Act" and were not compensated for such employment. In the context of the rest of the complaint, and particularly "Schedule A" annexed to the complaint, we construe this as merely a general statement of the facts which plaintiffs allege in more detail in the other paragraphs. The rest of the complaint appears to deal solely and specifically with the claims for time spent in "preliminary and postliminary activities," such as changing clothes, sharpening tools, and walking to and from work; Schedule A indicates that compensation for not more than three hours per week is asked by each plaintiff, and this much time is fully accounted for by the claims for those preliminary and postliminary activities. As we so construe Paragraph XI, it is not necessary to consider the argument, supported by Central Missouri Tel Co. v. Conwell, 8 Cir., 170 F.2d 641, that § 2 of the Act does not apply to the principal activities of the employer.[6] If we have misunderstood Paragraph XI, plaintiffs should be granted leave to amend that paragraph to state their claim more specifically in order to present the issue for the consideration of the district court.

Paragraph XIII of the proposed amended complaint states that the computations of the amounts claimed "have allowed twelve minutes a day credit for which the employees were paid in accordance with Section 7 of the [F.L.S.] Act for the period commencing on or about June 1st, 1943, to the present time." The implications to be drawn from this are not overclear; here, too, further clarification would be helpful. The district court appears to have concluded that it showed the present claims to be inconsistent with those based in the original complaint upon a collective agreement entered into in June, 1945, and made retroactive in this regard to August 11 (not June 1), 1943. This agreement allowed twelve minutes as a fair and reasonable time, to be compensated for, for the changing of clothes before and after work.

It also provided payment for time spent in preparation and repair of tools, but said nothing at all about time spent in walking to and from work. Contrary to the view of the district court, we interpret the allegations as intended only to cover activities outside the coverage of the agreement. Thus it would seem clear that as to activities prior to its effective date, going back in fact to 1938, allegation and proof of a custom of the business rendering them compensable cannot be inconsistent with the contractual provisions. Even beyond this, we do not see why, at least as a matter of pleading, whatever the proof may show, these allegations may not extend to other areas not within the contract. These might include claims of compensation for walking time, if not also for preparation or repair of tools outside regular working hours. If doubt remains as to the extent of plaintiffs' actual claims, the court may properly require an explicit statement of them in advance of trial.

Reversed and remanded.

---

[6] In view of the specific allegations we have discussed, it also becomes unnecessary to consider whether the Administrator's view, expressed as to § 4, 29 CFR, 1947 Supp. 790.8(b), that the preparation of tools is a preparatory activity which is an integral part of the principal activity, carries over also to § 2, and whether recovery could be had as to these items without the allegations.