**UNITED STATES v. ELIOPOULOS et al.**
No. 24, Docket 20253.

Circuit Court of Appeals, Second Circuit.
Nov. 18, 1946.

J. Vincent Keogh, U. S. Atty., of New York City (Vine H. Smith, Asst. U. S. Atty., of New York City, of counsel), for appellant.

David P. Siegel, of New York City (Charles H. Tuttle, of New York City, of counsel), for Elias Eliopoulos, appellee.

Charles Rosenthal, of New York City (Albert S. Gross, of Hackensack, N. J., of counsel), for George Eliopoulos, appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Before reaching the merits of this appeal the question of our jurisdiction must be determined. The appellees have moved to dismiss on the ground that the appeal was taken too late. The Criminal Appeals Act, 18 U.S.C.A. § 682, provides that the appeal in all such cases "shall be taken within thirty days after the decision or judgment has been rendered." It is the contention of the appellees that the trial court's decision was rendered on October 8, 1943 and an appeal had to be taken within thirty days thereafter. The appellant argues that the time for appeal did not start to run until the order of February 16, 1944 was signed by the judge and hence its petition for appeal, which was allowed on March 14, 1944, was timely. A statement of the facts follows.

In 1943 the defendants were indicted for offenses committed in 1930. The indictment contained two substantive counts and a conspiracy count charging them with violating, and conspiring to violate, provisions of the Internal Revenue Code relating to the importation of narcotics. The defendants were Greeks and until the year 1941 neither of them had ever been within the Eastern District of New York or any other part of the United States or any place subject to its jurisdiction, except that Elias Eliopoulos had visited the United States "as a tourist" for one month in 1919. In addition to pleading not guilty, they filed a special plea in bar based on the statute of limitations, 26 U.S.C.A. Int.Rev.Code, § 3748. This plea was overruled, the case proceeded to trial and on June 11, 1943, the jury returned a verdict convicting Elias Eliopoulos on all three counts and George Eliopoulos on the two substantive counts. The defendants moved in arrest of judgment to set aside the verdict and dismiss the indictment on various grounds, including the bar of the statute of limitations. Decision upon the motion was reserved and the "term kept open

for one year." On October 8, 1943, an adjourned date for sentence, the trial judge in open court rendered his decision orally, stating that he granted the motion solely on the ground of the statute. He concluded his remarks as follows:

"I believe on that ground and that ground alone these defendants are entitled to be released.

"Make appropriate entries along that line."

Thereupon the clerk of the court made the following entry on the docket:

"October 8, 1943—Before: Abruzzo, J. Defendants Elias & George Eliopoulos present—Court renders decision on motion to set aside verdict and to dismiss indictment as to Elias & George Eliopoulos—Motion granted. Indictment dismissed."

On the same day the clerk made a like endorsement on the back of the original indictment and issued a "Certificate of Disposition," in reliance upon which the defendants' bail bonds were cancelled and the surety company released the collateral held by it. Some four months later the United States Attorney presented to the judge a formal order, which the judge signed under date of February 16, 1944 embodying the substance of his oral decision of October 8, 1943. From the order of February 16th the United States took an appeal which was allowed on March 14, 1944. Thereafter on March 20, 1944 the appellees moved to vacate the order of February 16th, or in the alternative to resettle it so as to correct certain erroneous recitals therein. By an opinion filed on March 25, 1944 Judge Abruzzo denied the motion to vacate but granted the motion to resettle the order of February 16th. His opinion contained the following paragraph:

"The defendants urge that the order signed on February 16, 1944 in effect extended the time of the government to appeal. Upon the dismissal of an indictment, an order is entered on the docket. It has been the practice of this Court to take an appeal from the directions upon the indictment and the entries on the docket. An order, presented by the government was signed by this Court on February 16, 1944. Whether or not this is an extension of time to appeal is a disputed question, especially in view of the case of United States v. Hark & Yaffee, [320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290] recently decided by the Supreme Court of the United States."

The opinion was followed by the resettling order of March 31, 1944, which recites that on October 8, 1943, the court "stated orally its decision herein * * * and did dismiss the indictment and discharge the defendants, solely upon the ground that the prosecution of each of said defendants was barred by the statute of limitations applicable to the cause." From the resettling order the United States took an appeal on April 26, 1944. The two appeals were thereafter consolidated by the order of this court without prejudice to the appellees' claim that the court lacks jurisdiction to hear them.

In civil cases the problem as to what constitutes the judgment for purposes of an appeal has been put to rest by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Rule 58 declares that "The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry." That was not true at common law. As Judge Hough said in The Washington, 2 Cir., 16 F.2d 206, 208:

" 'Rendition' of judgment means the 'annunciation or declaring of the decision of the court,' and not the 'entry of the judgment upon the record.' Fleet v. Youngs, 11 Wend. (N. Y.) 522."

And to similar effect is the statement by Judge Phillips in Continental Oil Co. v. Mulich, 10 Cir., 70 F.2d 521, 524, that the judgment was duly rendered when it was ordered or pronounced by the court and that entry in the journal is but formal evidence thereof. See also, Freeman, Judgments § 46; Black, Judgments, § 106; 34 C.J. § 175. Hence we should entertain no doubt that Judge Abruzzo's oral pronouncement in open court on October 8, 1943 was the rendition of his "decision or judgment" and started the running of the thirty days within which an appeal must be taken, were it not for the case of United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290.

That was a direct appeal to the Supreme Court from an order quashing an indictment. Judge Sweeney had filed a written opinion on March 5, 1943, 49 F.Supp. 95, granting the motion to quash, and some time prior to March 29th the clerk had made a docket entry "Indictment quashed." On March 31st Judge Sweeney signed a formal order quashing the indictment. From this order the United States appealed on April 30th. The appellees moved to dismiss on the ground that the appeal was not seasonably taken. It was held to have been timely. The opinion of Mr. Justice Roberts notes that no form of words and no peculiar formal act is necessary to evince the rendition of a judgment or to mature the right of appeal, and states that in view of the diverse practice and custom in federal district courts [320 U.S. 531, 64 S.Ct. 361] "we cannot lay down any hard and fast rule," but where a formal judgment is signed by the judge "this is prima facie the decision or judgment," for no one would assume that the judge would covertly try to extend the time to appeal. This prima facie inference was fortified by the fact that in each of five appeals to the Supreme Court from the same district court it was found that a formal order had been entered; and this evidence it was thought should prevail over the letter of a deputy clerk of the court certifying to a contrary practice. The final statement is:

"In the absence of anything of record to lead to a contrary conclusion, we take the formal order of March 31 as in fact and in law the pronouncement of the court's judgment and as fixing the date from which the time for appeal ran."

In the case at bar the record contains facts which do lead to a contrary conclusion, even though the order of February 16th be taken as prima facie evidence of the local practice to enter such orders. In the first place there is nothing like the five appeals mentioned in the Hark opinion to confirm such practice; and there is uncontradicted evidence to show that the practice was not to enter formal orders. The judge himself in his opinion of March 24th says that

"Upon the dismissal of an indictment, an order is entered on the docket. It has been the practice of this Court to take an appeal from the directions upon the indictment and the entries on the docket."

The judge's opinion of the practice is confirmed by the clerk's letter of March 21, 1944. It is irrelevant whether any appeal has ever before been taken under the Criminal Appeals Act from a judgment of the District Court of the Eastern District of New York; the important fact is that the custom in that district has not been to enter formal orders. Moreover there is undisputed evidence that the pronouncement of October 8th was treated by everyone concerned as a final order terminating the case. Thus the clerk of the court made appropriate entries in his docket and on the indictment, and issued a "Certificate of Disposition"; and the defendants were released from bail without protest by the government. Finally, it may be noted that the order of February 16th itself recites that the court on October 8, 1943 "stated orally in open Court its decision herein." The foregoing facts sufficiently distinguish the case at bar from the Hark decision which does not purport to lay down any hard and fast rule that a formal order signed by the judge is necessary to constitute the judgment of the court.

Counsel for the appellant argues that it was necessary to get on the record the reason for the dismissal of the indictment in order to make good the government's right to appeal. We do not think so. It is always possible to look beyond the judgment itself to discover what were its grounds; there are countless cases to the effect that under a plea of res judicata the court will examine at large to see what was in fact decided. Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214 is an instance. It is true that when a direct appeal to the Supreme Court was taken under 18 U.S.C.A. § 682, the court refused to entertain it because the record did not clearly disclose that the decision was one of the limited class of decisions for which the statute provided a direct appeal to the Supreme Court. United States v. Carter, 231 U.S. 492, 493, 34 S.Ct. 173, 58

L.Ed. 330. But we do not read this case as applicable to an appeal taken to a circuit court of appeals.* Moreover, the district court's oral pronouncement on October 8th was taken down by the court stenographer and it shows that the motion in arrest of judgment was granted solely on the basis of the statute of limitations. All that was necessary in order to make the ground of decision a matter of record was to have the stenographer's notes written up and incorporated in the record.

Since the appeals were taken long after the expiration of thirty days after the judgment was rendered on October 8, 1943, this court is without jurisdiction.

Appeals dismissed.

---

* The statute, 18 U.S.C.A. § 682, as amended in 1942 provides that an appeal may be taken by the United States "to a circuit court of appeals * * * in all criminal cases, in the following instances, to wit: * * * From a decision arresting a judgment of conviction except where a direct appeal to the Supreme Court of the United States is provided by this section."