## UNITED STATES v. ROCKOWER.

### No. 104, Docket 21152.

United States Court of Appeals
Second Circuit.

Dec. 27, 1948.

Richard A. Moore, of New York City, for defendant-appellant.

Frank J. Parker, Chief Asst. U.S. Atty., of Brooklyn, N.Y. (J. Vincent Keogh, U.S. Atty., and Edward S. Szukelewicz, Asst. U.S. Atty., both of Brooklyn, N.Y., on the brief), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is a motion by a defendant to set aside his conviction upon plea of guilt in 1928 of the crime of forging United States postal money orders in violation of the then 18 U.S.C.A. § 347 [now § 500], on the ground that the judgment was void because entered in disregard of his constitutional rights. He was presented on an indictment in fourteen counts. As the clerk's entry and the endorsement on the reverse side ' of the indictment show, he pleaded guilty to Counts 1 and 2, the remaining counts were then dismissed on motion of the United States Attorney, and he was sentenced to imprisonment for five years on each count, the sentences to run consecu-

tively. According to his motion, made on January 22, 1947, he was confined in a federal penitentiary for nearly seven years in service of this sentence. His claim for vacation of the judgment is based upon his allegation that his plea of guilt was made without the assistance of counsel and without his having been advised of his constitutional right to such assistance. He is now confined in the New York State Prison at Auburn as a fourth offender under a sentence given·him in 1944 of thirty-five years to life, whereas the ordinary penalty for the crime of burglary, of which he had been convicted, was ten to twenty years. He alleges that this federal conviction was one of those used by the state court in finding that he was a fourth offender. While he asserts ignorance of his legal rights at the time of his conviction, he does not say why this motion was delayed to this time. It appears, however, that he had undertaken various proceedings in the state courts, at least one being an attack upon an earlier state conviction; and these all may be assumed to mark an increasing awareness of the law and of the precedents upon his part to his present position of rather complete legal sophistication. See Rockower v. Supreme Court of Kings County, Sup., 59 N.Y.S.2d 716; People v. Rockower, Sup., 51 N.Y.S.2d 185; People v. Rockower, 266 App.Div. 781, 41 N.Y.S. 2d 578, affirmed 292 N.Y. 655, 55 N.E.2d 518.

The court records of this conviction contain no more bearing upon the matter than has been stated. An Assistant United States Attorney has filed an affidavit setting forth with commendable frankness what he has been able to discover as to this proceeding. The judge, the commissioner, and the prosecutor are all dead; and there are no reporter's minutes or other notes now available. A deputy clerk is quoted as stating to the deponent "that the procedure of warning the defendant of his constitutional rights as it exists today, was not used at that time." Former [Postal] Inspector in Charge William Plath, who apprehended defendant in Syracuse, is quoted as asserting "that it was his practice to advise all defendants of their constitutional rights, and that he knew of no reason why he would not have done so in this case," and further that defendant on the train ride back from Syracuse said to him "that he would plead guilty; that it was the only thing he could do to get it over with."

The Assistant United States Attorney also sets forth defendant's record of convictions in various courts. These are so numerous as to suggest a question as to the effectiveness of the relief he now seeks, should it be granted, to cause the state court to reduce his sentence. He began as a juvenile delinquent in 1914 for burglary. There followed between 1917 and 1927 six convictions on serious offenses in New York for burglary, grand larceny, larceny, and forgery—all before his federal conviction and imprisonment. After release from the federal penitentiary he was convicted in 1936 of issuing worthless checks, and the case of People v. Rockower, supra, 266 App.Div. 781, 41 N.Y.S.2d 578, marks the reversal of some conviction before his present sentence. Hence he has had at least nine convictions for serious offenses, involving substantial terms of imprisonment, before his present conviction and confinement as a fourth offender.

The district court denied his motion to vacate the judgment, saying: "The defendant has waited almost twenty years before making such a motion—No reasonable excuse is presented for such delay.". On this appeal he has been most ably and skillfully represented by counsel serving at the request of the court, to whom we must express our keen sense of obligation for this high type of public service. It is urged that the judgment appears on its face to be void and should therefore be ordered vacated, or in any event that a hearing should be conducted in the district court to establish the facts.

At the outset the United States Attorney, without pressing the point strenuously, calls our attention to the lack of a formal order by the district court incorporating in it the court's denial of the motion to vacate. The judge's endorsement on the motion papers is, however, quite explicit, stating, over his signature, "The motion is denied," and adding the reasons

already referred to. The docket entry is to the same effect. The defendant accepted this action as a court judgment in a notice which he filed on April 10, 1947, of an intent to petition the Supreme Court for a writ of certiorari and later, when this was returned with the suggestion that he proceed by way of appeal, in his notice of appeal to this court. The district court itself also proceeded on the same assumption when later it allowed the defendant to appeal in forma pauperis "from the order dated April 1, 1947, denying his motion to set aside a judgment of imprisonment." The Federal Rules of Criminal Procedure, 18 U.S.C.A., do not require an order to be set forth in any particular form of words. Compare F.R.Cr.P. 49(c) with 32(b). We see no reason why the intent of the court, acted on by the defendant, should not be accepted as its decisive action. His original attempt to appeal was taken in time. F.R.Cr.P. 37(a) (2). Accordingly we hold the appeal properly taken from a final order of the district court.

With the enactment of N.Y. Penal Law, McK.Consol.Laws, c. 88, §§ 1941, 1942, visiting harsh punishment upon habitual offenders, and with the increased solicitude by the Supreme Court for the observance of constitutional safeguards in the trials of those accused of a crime, it is perhaps natural that proceedings of this nature should now appear in the federal courts. But the appropriate course to be followed by these courts where an offender is no longer confined under the federal judgment cannot be said to be as yet definitively settled. In United States v. Steese, 3 Cir., 144 F.2d 439, the Court of Appeals for the Third Circuit in scholarly opinions supported the right of such a defendant confined as a habitual offender in New York to apply for the vacation of a federal judgment upon which his state sentence had been in part based, defining the proceeding as in the nature of a writ of error coram nobis. Since then has occurred the adoption of the Federal Rules of Criminal Procedure and of the recently enacted Judicial Code. The latter in Title 28, United States Code, § 2255, providing "remedies on motion attacking sentence" for "a prisoner in custody under sentence of a court of the United States," in the words of the Revisor's Notes "restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus." The former state no directly appropriate remedy—the nearest being F.R.Cr. P. 35 for the correction or reduction of an illegal sentence, a remedy, as pointed out in Cuckovich v. United States, 6 Cir., 170 F.2d 89, hardly designed for the wiping out of a void judgment.

Whether therefore the remedy of a proceeding by motion in the nature of a writ of error coram nobis is now available to attack a conviction and sentence in a federal court long since executed by a defendant may not be altogether clear. But we need not determine this question, for the closely analogous case of United States v. Moore, 7 Cir., 166 F.2d 102, wherein the Supreme Court has now denied certiorari, 334 U.S. 849, 68 S.Ct. 1500, seems to us to point to the appropriate decision. There a person in confinement since 1928 as a second felony offender in the State of New York filed in the federal court a petition to vacate his conviction there in 1928 of a federal offense. The court, assuming the propriety of the remedy sought, denied it on three grounds: (1) that it must appear that a retrial would result in a different judgment from the one vacated and as a corollary there must be a showing of facts of valid defense or of a possibility of proving innocence or the like; (2) that the petitioner had too long slept upon his rights; and (3) that under Gayes v. New York, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962, the defendant at the time of his subsequent sentence as a habitual offender had full opportunity to contest infirmities in the earlier sentences. All these grounds are directly pertinent here.

As indicated above, it is not even apparent how wiping out this conviction will particularly benefit this defendant in the light of the number of other convictions recorded against him. This makes particularly relevant the third ground, that his remedy should be by direct approach to the New York courts. Indeed the latest opinion from the highest court of that state

indicates that the writ of habeas corpus is available against a judgment as fourth offender involving a claim that earlier judgments were void as lacking in due process. People ex rel. Harrison v. Jackson, 298 N.Y. 219, 82 N.E.2d 14.[1] Under the circumstances here disclosed it is much more appropriate that action be ·taken in the state courts. We have no way of telling what effect, if any, action here or in the district court would have as a practical matter with respect to his present confinement by the state authorities. We have already suggested its doubtful character as practical relief in the light of his situation. On the other hand, the lapse of time and the death of the principal actors making up the court at the time now render it no more feasible for the district court to investigate and pass on the matter than for the sentencing state court to do so. Quite possibly, decision must be made as a matter of deduction from the formal documents of record here. Accordingly we doubt if the division of the court in the Gayes case would reach to the present situation or suggest that after this long delay we should require the institution of an investigation which can hardly result in reproducing the past proceedings with sureness and may well be abortive in actual consequences to the defendant.

Affirmed. ·

---

[1] The three opinions in that case show that that court is properly concerned as to the proper procedure to follow and apply the principles presently announced by the Supreme Court of the United States. The denial of the writ in that case by the majority was because it was a collateral attack upon a judgment based on a definite finding of fact, i.e., of the age of the defendant, taking him outside

the jurisdiction of the juvenile court. Both the majority and the dissenting opinions—though possibly not the concurring opinion—appear to concede the propriety of the writ where there are factual allegations of failure of due process under either state or federal constitution.