### HUBER BAKING CO.
#### v.
### STROEHMANN BROS. CO. et al.
#### No. 69, Docket 22706.

United States Court of Appeals Second Circuit.

Argued Nov. 6, 1953.

Decided Dec. 7, 1953.

Appell, Austin & Gay, New York City, for appellant; Cyrus Austin, Rogers, Hoge & Hills, Lenore B. Stoughton, New York City, of counsel.

Greenwald, Kovner & Goldsmith, New York City, for appellee Quality Bakers of America Cooperative, Inc.; Harold Greenwald, Yonkers, and Harry Litwin, New York City, of counsel.

Nims, Martin, Halliday, Whitman & Williamson, New York City, for appellee Stroehmann Bros. Co.; John Dashiell Myers, Chester C. Baxter, Henry Temin, Philadelphia, Pa., and Carl B. Shelley, Harrisburg, Pa., of counsel.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and BRENNAN, District Judge.

CHASE, Chief Judge.

Invoking the diversity jurisdiction of the court the appellant, a Delaware corporation engaged in the manufacture and sale of bread and other bakery products, sued Stroehmann Brothers Company, a Pennsylvania corporation licensed to do business in New York, and Quality Bakers of America Cooperative, Inc., a New York corporation, of which both the appellant and Stroehmann Brothers Company are members. The complaint alleged trade-mark infringement and unfair competition and damages were sought together with an accounting by Stroehmann Brothers Company for profits. The plaintiff moved on affidavits for a temporary injunction and this appeal is solely from the denial of that motion.

The record shows that in 1913 the appellant began to use the name "Sunbeam" in the sale of its bread and some other bakery products in territory including the City of Philadelphia, and on December 9th in that year registered a label, on which were the words "Huber's Sun Beam Bread," in the United States Patent Office. It continued to use that label or the words "Huber's Sunbeam Bread" on the wrappers in which some of its bread was sold in such territory until the end of 1941.

On January 1, 1942, it became a member of the predecessor of the appellee cooperative which was then an unincorporated association that performed services for its members at cost, including the purchase of supplies, the setting of standards of production, inspection of plants and products to maintain such standards, and the satisfying of the individual ad-

vertising requirements of members. Such services have been performed by the appellee cooperative for its members, including the appellant, since it was incorporated in April, 1942. As a part of such advertising service the predecessor of the appellee cooperative undertook at the request of the appellant to lay out an advertising compaign for its "Sunbeam" products and before August, 1942, the result of this work, which was continued by the appellee cooperative, had been approved by the appellant. A distinctive feature of the proposed campaign was a wrapper for bread and rolls on which there was a picture in colors of the head, shoulders and arms of an attractive little girl who in some poses was eating a slice of buttered bread and in others was not. She was called "Miss Sunbeam." Two other members of the cooperative, one in Cleveland, Ohio, and one in Roanoke, Va., who did not compete with the appellant in the territory served by it, joined in the campaign and the expenses of the preparation of such wrappers printed in colors were paid in part by all three. On April 27, 1943, the appellee cooperative registered in the Patent Office the picture of the little girl eating a slice of buttered bread as a collective trade mark "used upon the goods to indicate that the goods are inspected, from time to time, in applicant's laboratory and quality thereof approved and that such persons so authorized to use same are members of the applicant cooperative corporation." In 1946 a composite mark comprising the picture of the little girl and "Sunbeam" or "Miss Sunbeam" was registered in Pennsylvania and other states including those in which the appellant and the appellee Stroehmann Brothers Company do business. Long before such state registration of the composite mark and with the knowledge and consent of the president of the appellant, the appellee cooperative used the word "Sunbeam" on the wrappers with the little girl's picture which it made available to its members and called the advertising campaign it conducted for its members the "Sunbeam

Campaign." By an undated written instrument signed by the president of the appellant who acknowledged his signature on December 26, 1944, as the duly authorized representative of that corporation, the appellant undertook to assign to the appellee cooperative its mark registered in the Patent Office as above noted including "the entire right, title and interest in and to the label and the registration thereof, #17387, and each and every part thereof, together with the good will of the business with which such label is used, reserving unto itself, however, the full and unrestricted right to the use of the same within the limits of the trading area hereinafter specified." The area specified included the City of Philadelphia. Also on December 26, 1944, the appellant and the appellee cooperative signed a written agreement in which it was set forth that, "the parties hereunto are desirous of fostering and promoting the merchandising of bread, and to that end, Quality has developed and owns a certain new and distinctive work of art, trade-mark, label and package, including the attached wrapper, all as represented and known as the 'Sunbeam' campaign." Under it the appellant for the considerations therein stated was granted by the appellee cooperative the right to use within a designated limited trading area, including the City of Philadelphia, upon terms and conditions specified "said work of art, trade-mark, label and package, 'Sunbeam' campaign." Said terms and conditions were unrestrictive upon the appellant except that its right to assign what it acquired under the agreement was a limited one and it was bound to use "said work of art, trade-mark, package and 'Sunbeam' campaign" so long as it remained a member of the cooperative without alteration in any respect without first obtaining the consent of the cooperative.

Appellee Stroehmann is and for many years has been a competitor of the appellant in selling bread and baked products in the City of Philadelphia. Before December 21, 1951, as a member of the

appellee cooperative, it had been granted the right to the use of what will now be called the "Sunbeam campaign" in trading areas outside the City of Philadelphia, and for some considerable time had tried to get the consent of the cooperative to its use of such "campaign" in that city. The appellant had always opposed that but, despite its opposition, appellee Stroehmann was on the last mentioned date allowed by the cooperative to use that "campaign" in the City of Philadelphia except that it was not permitted to sell its products in "campaign" wrappers to those retailers who were then customers of the appellant. After Stroehmann began to use the "campaign" as so permitted this suit was brought.

Though the wrappers Stroehmann uses bear the name of Stroehmann Brothers Company they are in over-all design so like the wrappers used by the appellant with its own name thereon that obviously confusion is likely. But more than the showing of that is necessary to obtain a reversal of the order below. A motion for an injunction *pendente lite* is addressed to the sound judicial discretion of the court and unless the record on appeal clearly shows that such discretion has not been exercised, or has been exercised without due regard for the applicable equitable principles, *i. e.*, that there has been an abuse of discretion, the order will not be disturbed. Meccano, Ltd. v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822; Decorative Stone Co. v. Building Trades Council, 2 Cir., 13 F.2d 123; Goldwyn Pictures Corporation v. Goldwyn, 2 Cir., 296 F. 391, 399; Sinclair Refining Co. v. Midland Oil Co., 4 Cir., 55 F.2d 42, 45.

What was here shown left much that was uncertain in respect to the appellant's right to prevent the use by the appellees of the so-called "Sunbeam campaign" in the City of Philadelphia, including the use by the appellee Stroehmann of the confusing similar wrapper. Though a trial may show that what purports to be an assignment of the appellant's Sunbeam mark to the appellee cooperative is not a valid assignment of that, it may also show that the appellant is estopped to deny the validity of that assignment. The respective rights of the parties to use the picture of the little girl in that trading area as a part of a trade mark are also by no means clear. Indeed, so much is left doubtful on the record here made that the denial of a preliminary injunction was well within the bounds of sound discretion. Hall Signal Co. v. General Ry. Signal Co., 2 Cir., 153 F. 907; Star Co. v. Colver Pub. House, C.C.S.D.N.Y., 141 F. 129; Owsley v. Yerkes, C.C.S.D.N.Y., 185 F. 686.

Moreover, as the court said, it was not shown that any damages which may be suffered by the appellant before the case can be tried on the merits will be irreparable. This, too, was a reasonable ground for the denial of a preliminary injunction. Foundry Services, Inc. v. Beneflux Corporation, 2 Cir., 206 F.2d 214; American Mercury, Inc. v. Kiely, 2 Cir., 19 F.2d 295; Papaliolios v. Durning, 2 Cir., 167 F.2d 737; Barrett v. City of New York, C.C.S.D.N.Y., 183 F. 793, 799; Blackmore v. Collins, D.C. Mich., 286 F. 629, affirmed 6 Cir., 290 F. 204.

Affirmed.