**UNITED STATES v. ROTH and five other actions.**

**No. 22752.**

United States Court of Appeals Second Circuit.

Motion Argued Oct. 7, 1953.

Decided Oct. 19, 1953.

Rehearing Denied Dec. 11, 1953.

468

On motions by appellees to dismiss the appeals. District Judge Goddard on March 27, 1953, granted motions dismissing six indictments against four individual defendants charged with attempted tax evasions on the ground that the defendants' constitutional rights had been violated when they appeared, testified, and produced documents, books, and records before a grand jury. In making his decision, the judge filed an extensive opinion which concluded with the statements that motions to dismiss the indictments (the latter identified by number and name) "are granted and the Government is directed to return, to the respective defendants," the records they had produced in response to the subpoenas, and "As the indictments are dismissed, it is unnecessary to consider the other motions which are directed to the indictments." Appropriate docket entries showing the granting of the motions to dismiss the indictments were immediately made in all the cases. On April 29, 1953, the Government presented to the judge a lengthy order, which he signed and filed, containing extensive recitals of papers filed and read and also stating that the motions to dismiss "are hereby granted," and ordering the Government to return their records to the defendants. Appellant's notice of appeal

for the six actions was dated and filed May 5, 1953. Appellees then moved in this court for dismissal of the appeals as not taken within 30 days of the "decision or judgment," as required by 18 U.S.C. § 3731; and see also Fed.Rules Cr.Proc. rule 37(a) (2). Motions granted; appeals dismissed.

James B. Kilsheimer, III, Asst. U. S. Atty., New York City (J. Edward Lumbard, U. S. Atty., and Gerome J. Leone and Whitney North Seymour, Asst. U. S. Attys., New York City, on the brief), for appellant.

Jacob J. Rosenblum, New York City (Garey & Garey, Edward T. Perry, and Wm. F. Corson, New York City, on the brief), for appellee Roth.

Lloyd Paul Stryker, New York City (Harold W. Wolfram, New York City, on the brief), for appellees Giglio, Lawn, and Livorsi.

Before CHASE, Chief Judge, and CLARK and FRANK, Circuit Judges.

PER CURIAM.

■ Unlike the civil rules, under which the lack of timely appeal here would be quite clear, see Fed.Rules Civ. Proc. rule 58; United States v. Wissahickon Tool Works, 2 Cir., 200 F.2d 936, 939, and cases cited, the federal rules of criminal procedure do not cover the point in issue; and in United States v. Hark, 320 U.S. 531, 534, 64 S.Ct. 359, 361, 88 L.Ed. 290, decided by a divided bench, where it was "Unaided by statute or rule of court," the Court relied on what it took to be a local practice for the evidencing of decision by later formal orders. A directly contrary practice in the Eastern District was found to require dismissal of an appeal in United States v. Eliopoulos, 2 Cir., 158 F.2d 206, 208. To similar effect is United States v. Rockower, 2 Cir., 171 F.2d 423, cer-

tiorari denied Rockower v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738, where we upheld the defendant's immediate appeal from a denial of a motion to vacate his conviction, such denial being merely endorsed by the judge on the motion papers and then noted in the docket.

The two cases last cited therefore point to the invalidity of the appeals here. But we think the necessary result is made quite clear by a local rule, being a uniform rule in effect in both the Southern and Eastern Districts, providing: "A memorandum of the determination of a motion, signed by the judge, shall constitute the order. * * *" Rule 10, General Rules of the United States District Courts for the Southern and Eastern Districts.[1] This general statement of the intent of the court—see United States v. Rockower, supra, 2 Cir., 171 F.2d at page 425—should be taken as decisive, since in effect it incorporates the clear provisions of the civil rules into the criminal procedure and serves to dissipate uncertainty as well as counsel control of the time of submission and hence of the signing of orders. For matters thus important should not turn upon the time when Government counsel choose to submit orders to the judge who has completed adjudication.

To offset the effect of this rule, appellant submits an affidavit from the Chief Deputy Clerk in the office of the District Court Clerk stating a practice to enter orders when a judge grants a motion as here and "The Government's submission for settlement of an order on this decision was in accord with the practice usually and customarily followed in this district, notwithstanding Local General Rule 10(a)." Whose is the practice is not made clear; other affidavits before us[2] leave it in some doubt whether it is

---

1. The rule continues: "but nothing herein contained shall prevent the court from making an order, either originally or on application for resettlement, in more extended form." There may be seeds of ambiguity lurking here as to the effect of granting an application for resettle-

ment of an order. But since no such application was made below, the provision quoted is not presently applicable.

2. An affidavit by the Assistant United States Attorney states that he attempted to take an earlier appeal, but "was

that of the clerk, or of the lawyers as in the civil cases as previously criticized by us, *e. g.*, Leonard v. Prince Line, 2 Cir., 157 F.2d 987, 989. Certainly we should expect something more precise than this before holding that the district judges had by positive action nullified their own sensible rules formulated with the greatest of care by co-operating committees of able lawyers from the two districts and only recently adopted.[3] We conclude that the appeals were not timely.

Motions granted; appeals dismissed.

### On Petition for Rehearing

PER CURIAM.

In seeking a rehearing and recall of our order of dismissal of these appeals petitioner-appellant attempts to show by an analysis of all the cases on our current docket that we have gone against the current practice of the judges in the Southern District of New York in making effective their decisions on motions. It finds 39 appeals from such decisions in the Southern and Eastern Districts of New York and makes its deductions from those cases. But we think its own figures show rather the contrary, namely, a quite high degree of compliance with the terms of the rules which we cited in our original opinion, particularly when the differing state practice and the distaste, if not opposition, of some counsel for and to the federal practice is had in mind. Of the cases thus collected, the greater number were those wherein the deciding judge called for the submission of a proposed order, or directed settlement of an order, as is, of course, his undoubted right and power. See F.R. 58. Indeed, district judges have it in their control to remove all doubt by making explicit and beyond misunderstanding their directions either for immediate judgment or for later settlement of a formal decree. It is our hope that they will follow yet more generally the practice of precision. Other appeals were those taken from memoranda of decision, in direct accord with our ruling, or were from formal orders which constituted the sole orders in those cases, together with an additional group which were promptly taken and timely on any basis of computation. The residue, upon which alone petitioner-appellant is forced to rely as demonstrating our disruption of lower court practice through rendering of appeals untimely, consists of 6 appeals, all in civil cases and all from the Southern District of New York.

These civil cases are of course not immediately pertinent and the contention is more an attack upon F.R. 58 and our ruling in United States v. Wissahickon Tool Works, 2 Cir., 200 F.2d 936, and cases there cited, than upon our present decision. Since some of these cases may present questions for our later decision, we do not attempt any definitive analysis at this time; but a general survey in-

---

advised," on bringing it for filing to the Clerk, "that an order would have to be entered." An affidavit by one of defense counsel recites that the Clerk has found no one in his office who gave such a direction, that he had given no instructions for refusing a notice of appeal where there was no formal order on a judge's signed memorandum of determination, that "the usual practice of the bar" was "to file a formal order," but the Clerk upon inquiry would merely refer the questioner to Rule 10 and the deputy's affidavit did not intend to offer any opinion as to the computation of the timeliness of an appeal. Other evidence tended to show that at a hearing on March 31, 1953, court and counsel relied on the court's direction for a return of the records to defendants as foreclosing compliance with a subpoena to the United States Attorney requiring production of some of these records in Chicago.

3. Effective March 1, 1952. An earlier form of the rule stated: "A memorandum of the determination of a motion, *together with a recital of the papers used thereon, and* signed by the court or judge shall constitute the order." The italicized words now omitted follow the method beloved in state practice and criticized federally. F.R. 54(a); Soderstrom v. Kungsholm Baking Co., 7 Cir., 184 F. 2d 756, 757; United States v. Wissahickon Tool Works, supra. The order prepared by the Government and submitted to Judge Goddard thus followed an older practice repudiated in the new rule.

dicates that the number of actual instances of untimely delay must be reduced, perhaps to the zero point.[1] In any event the number is too insignificant to be disturbing or to offset the large measure of compliance shown by the other cases.

 Petitioner-appellant also urges the effect of lack of post card or other notice of the decision, relying upon Oddo v. United States, 2 Cir., 171 F.2d 854, certiorari denied 337 U.S. 943, 69 S.Ct. 1498, 93 L.Ed. 1747, where we held receipt of the post card notice essential to the running of the time for appeal. Certainly notice is most important, although we find the respective contentions of the parties as to the practice in the clerk's office as to giving notice confusing, if not misleading.[2] Of course the clerk ought to send out notice of the decision when it is actually made, i. e., at the time of original entry of the judge's definitive action. The civil rules specifically require notice of "the *entry*" of an order or judgment, F.R. 77(d); and the criminal rules are in accord, F.R.Cr. P. 49(c), and Oddo v. United States, supra. Moreover, lack of notice is a definite ground for the granting of some further time for appeal under F.R. 73 (a), as we have recently ruled.[3] But we do not see how petitioner-appellant can claim any more time here, since it

showed from its own acts that it was fully apprised of and acted upon Judge Goddard's decision within four days after its rendition.

Petition denied.

---

1. In one case already heard, Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 208 F.2d 464, the running of the time for appeal was suspended by the filing and decision of a petition for rehearing, see F.R. 73(a), a fact overlooked by petitioner-appellant here. In another, De Pinho Vaz v. Shaughnessy, 2 Cir., 208 F. 2d 70, no point appears to have been raised by any party and the question became academic when the court agreed with the ruling below that the action could not proceed for lack of an indispensable party. How many of the remaining 4 appeals may be saved in like manner or as in our unreported decision, Nov. 5, 1953, on a motion in the pending appeal of Davis v. United States, affording appellant opportunity to secure the benefit of the extra time allowed under F.R. 73 (a), in correlation with F.R. 6(b), we do not now know.

2. In analyzing some 50 decisions on contested motions in the Southern District of New York, petitioner-appellant stresses the absence of any notice at the time of the memorandum decision by the judge, giving the distinct impression that such notices were sent after the entry of formal orders. But counsel for appellees assure us that no notices were sent at any time, thus destroying any implication as to a practice in the clerk's office necessarily at variance with our ruling. Moreover, as asserted, formal orders were entered in not more than 6 cases, 2 of them upon specific direction by the court, and notices were not sent even in those cases.

