## AMERICAN TCP CORP.
### v.
## SHELL OIL CO.

United States District Court, S. D. New York.

July 27, 1954.

Bruce B. Clyman, New York City, for plaintiff.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendant, Harold F. McGuire, Leslie D. Taggart, William G. Fennell, New York City, of counsel.

WEINFELD, District Judge.

In this action the defendant is charged with violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the plaintiff now moves for a preliminary injunction enjoining the defendant from (1) representing the expression "TCP" in its trademark; (2) threatening plaintiff's customers with suit for trademark infringement; (3) representing that "TCP" is available only in premium gasoline sold by the defendant and its licensee; (4) and otherwise interfering with plaintiff's business.

The gist of the plaintiff's charge is that the defendant, also referred to hereafter as "Shell," is engaged in destroying plaintiff's business in an effort to monopolize the sale of tricresyl phosphate as a gasoline additive by claiming the letters "TCP" as its trademark. Plaintiff also alleges that an earlier action commenced in the New York State Supreme Court by Shell against plain-

tiff charging it with infringement of Shell's claimed trademark "TCP" and unfair competition based upon various acts of imitation is part of a plan to drive plaintiff out of business in furtherance of the attempt to monopolize the sale of tricresyl phosphate.

Tricresyl phosphate, a chemical compound, has been used for many years principally as a plasticizer for lacquers and vinyl plastics. In recent years it has been found effective as an additive to automotive gasoline to reduce spark plug fouling and pre-ignition combustion. Shell claims it was the pioneer in this expanded use of the compound. Since January 1952, it has sold its motor gasoline additives for aviation use in containers, the labels of which bear its claimed trademark "TCP" and also its distinctive color scheme.

In May, 1953, after an extensive national advertising campaign, Shell commenced the sale of the additive under the trade-name "TCP" as a featured component part of its "Shell Premium Gasoline" which is dispensed to the purchasing public from gasoline pumps, bearing the words "Shell Premium" and displaying the defendant's distinctive color scheme. Public acceptance of the product was immediate and widespread. Shortly after Shell's introduction of the additive other gasoline refining companies also included tricresyl phosphate as an ingredient of their automotive gasoline, but none of these competing companies designated the additive as "TCP."

Shell by the summer of 1953, had registered "TCP" as its trademark for its gasoline additive in forty-six states and in the remaining two in December 1953 and January 1954. Its application to register the mark "TCP" is pending in the United States Patent Office, but as yet no action has been taken thereon.

The plaintiff was incorporated in November, 1953. Its corporate name includes the symbol "TCP." The defendant promptly objected to its inclusion in the plaintiff's name and protested the proposed distribution by plaintiff of its gasoline additive under the symbol "TCP." Shell contended it had a valid trademark position in "TCP," and, further, that since its additive had become identified by the public under that symbol, plaintiff's name would constitute unfair competition. Plaintiff disputed these claims, contending it was a generic term and incapable of acquiring a secondary meaning. Conferences followed at which the parties explored their respective contentions, but they failed of result.

During the progress of the conferences plaintiff sought from the defendant a licensing agreement to distribute the additive under the "TCP" mark. In pressing for the license arrangement, plaintiff's president, an attorney, suggested that if Shell did not grant the license plaintiff would be forced to oppose the defendant's application for federal registration of "TCP," and significantly pointed out, "If, on the other hand, there is no opposition to [Shell's] registration of 'TCP' it is probable that the mark will remain unchallenged and will become incontestable at the end of five years." This was a rather curious position for one fighting an alleged monopolistic practice through the use of the trademark.

In April, 1954, plaintiff began marketing tricresyl phosphate under the name "TCP Concentrate" in cans which it sells and distributes through automotive jobbers, dealers, and chain stores for resale.

On May 25, 1954, Shell, following an exchange of self-serving correspondence between the parties, instituted the State Court action. This was followed by the commencement of this action on June 11, 1954.

The plaintiff's basic position is that the letters "TCP" are a long-standing abbreviation for tricresyl phosphate used by chemists and others familiar with the chemical long before Shell claimed the symbol as its trademark and since this is the generic name of the chemical the trademark is invalid; further, that "TCP" has never acquired a sec-

ondary meaning among technical people, the automotive accessory trade and the general motoring public.

■ The plaintiff's fundamental contention is challenged by seven distinguished chemists who in substance swear that they never heard or saw tricresyl phosphate referred to as "TCP" nor did they identify "TCP" with the chemical compound; but that since the introduction by Shell of its "TCP" additive in premium gasoline, the symbol has become known as identifying and distinguishing Shell's additive. The available chemical literature on the question also is the subject of controversy. To meet a number of catalogue and other publications submitted by plaintiff which refer to tricresyl phosphate as "TCP," the defendant researched a total of nine hundred thirty chemical reference books and only eighty mentioned tricresyl phosphate. Of these, no United States reference book used the abbreviation "TCP"; and only five, printed in Great Britain, do contain such references. Moreover, marketing experts employed by Shell's competitors state that "TCP" identifies Shell's motor gasoline additive and since its introduction in May, 1953, the mark distinguishes it from the additives sold by companies other than Shell. Thus, a sharp conflict exists on the basic issues upon which plaintiff predicates its claim to injunctive relief in advance of trial. This circumstance makes particularly pertinent my comment in Anderson-Friberg, Inc. v. Justin R. Clary & Son, D.C., 98 F.Supp. 75, 82:

"With the asserted legal rights of the plaintiffs to ultimate relief put in substantial issue on both legal and factual grounds, no preliminary injunction should be granted. The law is well settled that the extraordinary relief of a preliminary injunction, which in advance of trial in effect gives a party the full relief to which he might be entitled after a full trial, will not issue under such circumstances. Behre v. Anchor Insurance Co., 2 Cir., 297 F. 986; Hall Signal Co. v. General Ry. Signal Co., 2 Cir., 153 F. 907; United States v. Adler's Creamery, Inc., 2 Cir., 107 F.2d 987. * * *"

■ Another circumstance militating against the grant of the drastic remedy here sought is the complete absence of proof to support plaintiff's assertion that its suppliers, customers, or other persons dealing with it have been sued or threatened with suit by the defendant. There is no evidence to establish that defendant or any of its representatives committed specific overt acts of interference with plaintiff's business.[1] While the defendant did request its employees to submit to its legal department information which tended to support its charge that confusion existed in the public mind between Shell's product and plaintiff's product, it specifically enjoined its district managers and other employees to avoid interference with plaintiff's relations to its customers and suppliers.

The sharply contested legal and factual issues should await a trial on the merits. The prior State Court action which involves the very issues upon which the present motion is based can be reached in short order in the normal course of events and, indeed, even prior to being reached in this Court were I to grant a preference.

The motion is denied.

Settle order on notice.

---

1. Merrimac Hat Corporation v. Crown Overall Mfg. Co., D.C.S.D.N.Y., 91 F. Supp. 49, 51–52, affirmed 2 Cir., 186 F.2d 505.