**THE WASHINGTON PROFESSIONAL BASKETBALL CORPORATION, Inc., Plaintiff,**

**v.**

**THE NATIONAL BASKETBALL ASSOCIATION, an unincorporated association, and Maurice Podoloff, Defendants.**

United States District Court
S. D. New York.
May 26, 1955.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Abe Fortas, Washington, D. C., Jay H. Topkis, New York City, of counsel, for plaintiff.

Simpson, Thacher & Bartlett, New York City, George G. Gallantz, New York City, of counsel, for defendants.

DAWSON, District Judge.

This is a motion pursuant to Rule 65 of the Rules of Civil Procedure, 28 U.S. C.A., for an order enjoining the defendants from contracting to purchase, negotiating to purchase, or purchasing the franchise, player contracts, and other assets of the Baltimore Bullets, Inc.

The complaint has two causes of action. The first cause of action is brought under the Anti-trust laws. The second cause of action alleges, in substance, interference by the defendants with a contract alleged to have been made by the receiver of the Baltimore Bullets, Inc. to sell its assets to the plaintiff.

The plaintiff, the Washington Professional Basketball Corporation, Inc., has been organized for the purpose of owning, operating, and promoting a major league professional basketball team in the District of Columbia. The moving papers indicate that the plaintiff instituted negotiations with the receiver of the Baltimore Bullets, Inc. to purchase from it the National Basketball Association franchise, the player contracts, and its other assets. It appears that the Baltimore Bullets, Inc. had suspended operations sometime in November, 1954. It appears that the Baltimore Bullets, Inc. was a member of the defendant National Basketball Association, and that the by-laws of that Association require the approval of two-thirds of the members of the Board of Governors of said Association for any transfer of franchise.

The moving papers allege that on or about April 7, 1955, the plaintiff entered into a contract with the receiver of the Baltimore Bullets, Inc. to purchase the franchise, player contracts, and other assets thereof, subject to the approval of

the proposed transfer of the franchise by the Board of Governors of the National Basketball Association, and that a $3,000 deposit was made to the receiver by the plaintiff. Although the moving papers allege that such contract was entered into, this allegation is stated in the nature of a conclusion and no evidentiary facts are submitted in support of this conclusion which would justify the Court in accepting such statement as an undisputed fact. The defendants deny that any such contract was entered into. On the argument of the motion, there was exhibited to me a copy of a telegram (not included in the papers submitted on the motion) which would lead to the inference that no contract of the nature referred to in the moving papers was entered into on April 7, 1955, but rather that there were negotiations looking to a contract.

There seems to be a very definite issue of fact as to whether, in fact, any binding contract was ever entered into between the plaintiff and the receiver of the Baltimore Bullets, Inc. to sell to the plaintiff the franchise, player contracts, and other assets of Baltimore Bullets, Inc. It would be a natural assumption that if any such contract had been entered into, it would have been represented by some memorandum in writing, particularly since the receiver was a Court Officer. There has been no indication that the receiver has ever received approval from the Court in Baltimore for any such sale, or that the terms and conditions of any such sale have ever been incorporated in a memorandum in writing. In the absence of evidentiary proof that such contract was entered into, the Court cannot take the unsupported assertion in the moving papers that such contract was entered into as establishing that fact. See Huber Baking Co. v. Stroehmann Bros. Co., 2 Cir., 1953, 208 F.2d 464; American TCP Corp. v. Shell Oil Co., D.C.S.D.N.Y.1954, 123 F.Supp. 55.

In the absence of proof of the existence of a binding contract, it would not be possible for the Court to issue a temporary injunction to restrain inference with the contract since the existence of the contract itself is in issue.

The other relief sought in the complaint is an injunction to restrain the defendants from making any commitments or arrangements in furtherance of the conspiracy alleged in the complaint. It is alleged that the Board of Governors of the National Basketball Association refused to approve the transfer of the franchise of the Baltimore Bullets, Inc. to plaintiff, but instead has offered $30,000 for the purchase of the franchise, player contracts, and other assets of the Baltimore Bullets, Inc. It is alleged that the object of these actions by the defendants was to exclude Washington from the National Basketball Association and thereby to obtain for existing members of the Association the services of the former Baltimore players, and so to violate the Anti-trust laws.

The answering affidavit points out that the Baltimore Bullets, Inc. had gone into receivership, and that at that time, it owed a substantial amount of debt, including salaries to players. This affidavit points out that before a franchise is granted, the applicant must be approved by the Association and that no person or corporation is admitted to membership in the Association until the Board of Governors has approved the applicant's financial stability and the manner in which the applicant proposes to further the objectives of the Association. It states that the Board of Governors of the Association did not approve the basis of the proposed capitalization of the Washington Professional Basketball Corporation, Inc. in that that corporation proposed to raise its capital substantially by the sale of debenture bonds which would handicap the venture by a burden of annual debt service of as high as $12,000 a year. The affidavit states:

"The Board was of the opinion that such a fixed obligation would be too likely to undermine the financial stability of the Washington basketball team and to cause a repetition of the experience the As-

sociation had just had with Bullets, Inc., i. e., interruption of schedule, reassignment of basketball players, appointment of receiver, litigation, etc."

This raises the issue as to whether the actions of the Association were reasonable and taken in good faith, or whether they were, as contended by the plaintiff, designed to monopolize trade and commerce among the several states. This issue is not one which can be decided upon affidavits on an application for a temporary injunction. American TCP Corp. v. Shell Oil Co., supra; Anderson-Friberg, Inc., v. Justin R. Clary & Son, D.C.S.D.N.Y.1951, 98 F.Supp. 75, 82.

The motion for a temporary injunction is denied. So ordered.