**The F. & M. SCHAEFER BREWING CO., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 152, Docket 23775.**

United States Court of Appeals Second Circuit.

Argued Jan. 20, 1956.

Decided Sept. 12, 1956.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Atty., Dept. of Justice, Washington, D. C., Leonard P. Moore, U. S. Atty., Elliott Kahaner, Asst. U. S. Atty., E.D.N.Y., Brooklyn, N. Y., on the brief), for defendant-appellant.

Thomas C. Burke, New York City (White & Case, Walter S. Orr and Edmund W. Pavenstedt, New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and FRANK, MEDINA, HINCKS, LUMBARD, and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

The plaintiff sued to recover the amount of stamp taxes which it alleged the government had illegally assessed and collected from it. The transaction which the government claimed to be thus subject to the tax in question did not involve the issue of any new stock certificates, but was actually an increase in the corporation's capital account by the transfer of $6,375,000 from its earned surplus account to its capital account, thus increasing the capital from $3,725,000 to $10,100,000, and the value of certain issued no-par-value stock from $36.25 to $100 per share. In a reasoned opinion, D.C.E.D.N.Y., 130 F.Supp. 322, Judge Rayfiel granted the plaintiff's motion for summary judgment for the refund, quoting and relying upon the detailed exposition in United States v. National Sugar Refining Co., D.C.S.D.N.Y., 113 F.Supp. 157, where Judge Leibell held that stamp taxes are required only on the issuance of capital stock, and not on a bookmaking transfer assigning greater capital assets to already issued stock. But we do not reach the merits, since we dispose of the appeal on a motion made by appellee to dismiss it on the ground that it was not timely taken. Originally the issues were argued before a panel of this court consisting of Judges Medina, Hincks, and Waterman; but since the motion presented an important question of practice and procedure going beyond the fortunes of this particular case, we determined that adjudication should be made by the full personnel of active circuit judges.

The facts on which disposition of this issue turns are as follows: By its complaint filed August 31, 1954, the plaintiff-

appellee alleged payment on February 19, 1954, of documentary stamp taxes in the amount of $7,189.57 and demanded "judgment against defendant in the sum of $7,189.57, interest and costs." The alleged payment was admitted in the defendant's answer. On December 29, 1954, the plaintiff moved for summary judgment upon three affidavits showing in detail the tax payment of $7,189.57, and the grounds upon which it had been compelled, and also that no refund or credit had been made thereon. On April 14, 1955, Judge Rayfiel signed the memorandum decision directed to said motion, which is reported in D.C., 130 F. Supp. 322–324 and which concludes: "I am in agreement with Judge Leibell's analysis and, accordingly, the plaintiff's motion is granted." Thereupon the clerk made a docket entry as follows: "April 14 Rayfiel, J. Decision rendered on motion for summary judgment. Motion granted. See opinion on file." On May 24, 1955, the judge signed a formal "Judgment," as submitted by the plaintiff, for the recovery from the defendant of "the sum of $7,189.57 and interest thereon from February 19, 1954 in the amount of $542.80, together with costs as taxed by the Clerk of the Court in the sum of $37, aggregating the sum of $7,769.37." This document was stamped: "Judgment Rendered: Dated: May 24th, 1955. Percy G. B. Gilkes Clerk." Thereupon an entry was made in the clerk's docket as follows: "May 24 Rayfiel, J. Judgment filed and docketed against defendant in the sum of $7189.57 with interest of $542.80 together with costs $37 amounting in all to $7769.37. Bill of Costs attached to judgment."

The defendant filed its notice of appeal on July 21, 1955, or 96 days from the original grant of summary judgment and 58 days from the filing of the formalized judgment signed by the judge. Under F.R.C.P., rule 73(a) the United States has 60 days from "the entry of

the judgment appealed from" in which to appeal, with a possible additional 30 days where granted by the district court upon a showing of excusable neglect in failing to learn of the entry. In our view the entry of judgment was on April 14, and the appeal is too late.

The governing principle is found in F.R. 58, which states as to non-jury cases: "When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction; but when the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of the judgment shall not be delayed for the taxing of costs." In addition, F.R. 79(a) requires the clerk to keep a book known as a "civil docket," in which each civil action shall be entered with its file number and where "All papers filed with the clerk * * *, all appearances, orders, verdicts, and judgments shall be noted chronologically" on the folio assigned to the action. The rule continues: "These notations shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The notation of an order or judgment shall show the date the notation is made." The rules also make provision for formal judgments, F.R. 79(b), their form, F.R. 54(a),[1] and suitable indices thereto by the clerk, F.R. 79(c).

As we have held, these rules contemplate some decisive and complete act of adjudication by the district judge; when this is done, and notation thereof made in the civil docket, the judgment is complete without other formal documents

1. Compare forms of judgments, Report of Proposed Amendments to the Rules of Civil Procedure for the United States District Courts, October 1955, Forms 30 and 31, pp. 68–70.

which, if filed, are ineffective to delay the judgment or extend the time of appeal. See, e. g., United States v. Wissahickon Tool Works, 2 Cir., 200 F.2d 936, the notation of a grant of summary judgment, as here; and see also Leonard v. Prince Line, 2 Cir., 157 F.2d 987, 989.; Murphy v. Lehigh Valley R. Co., 2 Cir., 158 F.2d 481, 485; Binder v. Commercial Travelers Mut. Acc. Ass'n of America, 2 Cir., 165 F.2d 896, 901; Markert v. Swift & Co., 2 Cir., 173 F.2d 517, 519, note 1; Napier v. Delaware, Lackawanna & Western R. Co., 2 Cir., 223 F.2d 28; In re Nuese's Estate, 15 N.J. 149, 152, 104 A.2d 281, 282. The history of F.R. 58 and its amendments, designed to strengthen it, as stated in the footnote,[2] demonstrate that this was the intent of the rule. Its purpose is also advanced—as we pointed out in United States v. Roth, 2 Cir., 208 F.2d 467, 469—by Rule 10(a) of the Southern and Eastern Districts of New York, stating that a "memorandum of the determination of a motion, signed by the judge, shall constitute the order".[3] Hence here everything necessary to start the appeal time running occurred on April 14.

Appellant objects that the docket entry of April 14 does not show the "substance" of the decision. Quite obviously it is not self-contained in the sense that a casual and uninformed reader would know what adjudication had been made, or anything more than that a decision had been rendered granting the motion for summary judgment noted in earlier docket entries and that an opinion was available for the reading. But just as obviously, it was quite informative to the people really involved, the litigants, their counsel, and, indeed, the clerk. The face of the entry itself would tell them all they needed to know at once of the fate of the case and the necessity of appeal, while the material referred to in the entry would afford the precise details when needed by the clerk to prepare a formalized judgment file, or by the parties to arrange to collect or pay the judgment. As a form of communication, therefore, the notation is wholly adequate to inform those for whom it was intended. It serves its real and obvious purpose of showing to these interested persons that the judge had arrived at a decision; for it is this reflection of the judge's state of mind which is decisive. Of course it lies in the judge's power to postpone finality whether because he has not yet reached the point of judgment or whether because he wants to take time—with the help of counsel or without—to embody the result in his own prepared judgment. But when he shows adjudication, F.R. 58 provides for its simple and quick signification without delay for the elaboration so often cherished by winning counsel. See United States v. Roth, supra, 2 Cir., 208 F.2d 467, 470.

Thus to look for the expression of judicial intent affords a reasonably clear

2. In the successive Notes to F.R. 58 appearing in the Preliminary Draft, May 1944, the Second Preliminary Draft, May 1945, and the Report of Proposed Amendments, June 1946, at page 76, there is a statement of the reasons for the changes made—including the express mandate that the "entry of the judgment shall not be delayed for the taxing of costs"—to obviate the following of local practice to the contrary in, notably, the Southern and Eastern Districts of New York. Citations are given to cases showing the federal law of long standing in general accord with the intent of the rule, with particular citation of The Washington, 2 Cir., 16 F.2d 206, that failure of the clerk to enter judgment as thus required is a "misprision" "not to be excused." See also Report of Proposed Amendments, October 1955, F.R. 58, stating a further formula for the judge's direction of entry; and the forms of judgment, Forms 30 and 31, supra note 1, with accompanying notes separately citing and relying on United States v. Wissahickon Tool Works, 2 Cir., 200 F. 2d 936, and companion authorities cited supra.

3. The complete rule reads as follows:
"Rule 10. Orders.
"(a) A memorandum of the determination of a motion, signed by the judge, shall constitute the order; but nothing herein contained shall prevent the court from making an order, either originally or on an application for resettlement, in more extended form."

touchstone as to the meaning and validity of docket notations of judgments. Of course this principle may not settle every case if trial judges are not careful to make a clear disclosure of intent, as they certainly should be urged to do. But judicial uncertainty may well postpone judgment, while satisfaction of some mere formality should not. Hence it seems undesirable, as well as impracticable, to require more by way of specification of detail for the docket notation. As we have seen, the rules make a clear distinction between the judgment itself and the brief notation thereof in the docket. It surely is impracticable to require a full statement of every judgment, including, for example, the long detail of an injunction; that would destroy any utility of the docket as a quick and ready reference to show the activities had in a case, and would make it not a series of "brief" notations, but a duplication of the judgment book. And it would end any endeavor to speed final adjudication, but would force that to await the submission and acceptance of formally prepared judgments. On the other hand, any attempt to require less, but still some, detail beyond this manifestation of judicial intent would mean chaos and confusion as the poor clerks attempted to determine how much less would be enough. There could easily

be more litigation over this side issue than over the adjudication itself. Consider questions which might arise as to the omission of references to interest and costs.[4] The rule as drafted provides a workable means of handling a matter otherwise not without practical difficulties; it also serves the function of avoiding such purely useless delays—reflecting upon the courts in these days of popular public interest in more speedy justice—as that of almost a year in United States v. Wissahickon Tool Works, supra, 2 Cir., 200 F.2d 936, taken merely to cast the judgment made into more formal language.[5] It should not be rendered quite useless (so much so that practicalities would then suggest its repeal for the local state rule of no judgment until settled with counsel) by the interpretation urged. And the precedents are to the contrary. See United States v. Wissahickon Tool Works and companion cases cited supra;[6] also Report of Proposed Amendments to the Rules of Civil Procedure for the United States District Courts, October 1955, Rule 58, pp. 59, 60, Forms 30, 31, pp. 68–70 and notes thereto; and 6 Moore's Federal Practice ¶ 58.03 [1], note 5 (2d Ed. 1953), specifically approving as a docket notation, "Judgment for plaintiff enjoining the defendant pursuant to the prayer of the complaint entered."[7]

---

4. Presumably any self-contained notation would need the inclusion of these important items, as in the last docket entry herein quoted above; but interest on a money judgment is mandatory, 28 U.S.C. § 1961, cf. the forms cited supra note 1, and a judgment is not to be delayed for the taxation of costs, see supra note 2. This would mean that the clerk must be more precise than the judge in deciding, i. e., that the clerk must presume to go beyond the judge's holding in making up the notation. But see the cases cited infra note 7.

5. Even longer delays have been observed, as where a worthless shell of a patent declared invalid has continued in nominal existence for two years pending a formal entry of judgment. So there was no practical reason for the 40 days' delay of the present case, invited by the plaintiff

in submitting a superfluous form of judgment.

6. Other cases have been so dismissed on the call of our motion calendar, save in a few instances where a 30-day additional period may be made available to an appellant under F.R. 73(a) and as noted in United States v. Roth, 2 Cir., 208 F.2d 467, 471, at n. 1.

7. Citing Steccone v. Morse-Starrett Products Co., 9 Cir., 191 F.2d 197, and Willoughby v. Sinclair Oil & Gas Co., 10 Cir., 188 F.2d 902, where notations of injunction judgments were quite abbreviated; and see also In re Forstner Chain Corp., 1 Cir., 177 F.2d 572, and Porter v. Borden's Dairy Delivery Co., 9 Cir., 156 F. 2d 798, 799, as to judgments for defendants. In United States v. Cooke, 9 Cir., 215 F.2d 528, 530, relied on by appellant, the judge's direction that judgment should

894

We conclude, therefore, that the practice heretofore sanctioned by us represents a correct interpretation of the governing rules, as well as a wise and practicable principle materially aiding in the expeditious determination of civil cases. Accordingly the appeal must be dismissed as not timely filed.

Motion to dismiss granted; appeal dismissed.

enter "as prayed for in the complaint" was held sufficient, but the notation in the docket, "Filing decision (McLaughlin—Favor Plaintiff)" was held insufficient, as not telling what was granted, and the difference between that and the notation in the Wissahickon case was pointed out. Similarly in Kam Koon Wan v. E. E. Black, Limited, 9 Cir., 182 F.2d 146, the notation was only for a partial judgment which could not even be final.

In general, since our own rulings have been so definitive, decisions from other circuits are not necessarily helpful, particularly because the language of a trial judge often needs to be interpreted against a local background, just as here we need to have in mind our local practice, including Rule 10 of the court below quoted in note 3 supra. But as we have just indicated, we have found no decision contrary as to the form and intent of the docket notation. With reference to the other point, namely, the effect of a

judge's memorandum and direction when docketed as a judgment, there has been some division, three circuits—the First and Ninth and our own—supporting the view herein stated, while two others seem in varying degrees and not overclearly contrary. See In re Forstner Chain Corp., supra, 1 Cir., 177 F.2d 572; Napier v. Delaware, Lackawanna & Western R. Co., supra, 2 Cir., 223 F.2d 28; Anderson v. Continental Steamship Co., 2 Cir., 218 F.2d 84, 86; Steccone v. Morse-Starrett Products Co., supra, 9 Cir., 191 F.2d 197; but cf. Healy v. Pennsylvania R. Co., 3 Cir., 181 F.2d 934; Brown v. United States, 8 Cir., 225 F.2d 861. See Commentary, Entry of Judgment, 18 Fed. Rules Serv. 927; and see also Report of Proposed Amendments, October 1955, p. 60, supra note 1, accepting the majority view as "declaratory of existing law" and recommending an amendment to carry it more clearly into effect.